# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

VLADIMIR STOJCEVSKI, Individually, and as
Personal Representative of the Estate of DAVID
STOJCEVSKI, deceased,

      Plaintiff,

Case No. 15-
Honorable

v

COUNTY OF MACOMB; SHERIFF ANTHONY
M. WICKERSHAM, MICHELLE M. SANBORN,
BARB CASKEY, LISA BINGHAM, DEPUTY
LICAVOLI, DEPUTY M. MURPHY, DEPUTY
JOHNSON, DEPUTY KEITH PETHKE,
DEPUTY PAUL HARRISON, DEPUTY JOHN
TALOS, DEPUTY WILLIAM MISANY,
DEPUTY STEVEN MARSCHKE, DEPUTY
MATTHEW SALAS, DEPUTY KELLY
KULLMAN, DEPUTY WILLIAM HORAN,
DEPUTY J. DEHATE, DEPUTY CAMPAU,
DEPUTY KRUGER, DEPUTY PISZCZEK, SGT.
PATRICK JOHNSON, various DEPUTY
JOHN/JANE DOE's, CORRECT CARE
SOLUTIONS, LLC, a foreign limited liability
company; MONICA CUENY, TIFFANY
DELUCA, KELLY MANN, CHANTALLE
BROCK, DEEANN PAVEY, DANYELLE
NELSON, MICAL BEY-SHELLEY, VICKY
BERTRAM, H. ERHLICH, MONICA VAN
DAMME, JACLYN CUBANSKI, AMANDA
BISHOP, CYNTHIA DEVIEW, SARAH
BREEN, and DR. LAWRENCE SHERMAN, and
various JOHN/JANE DOE providers, Jointly and
Severally,

      Defendants.

IHRIE O'BRIEN
By: Robert D. Ihrie (P26451)
    Harold A. Perakis (P35921)
Attorney for the Plaintiffs
24055 Jefferson Avenue, Suite 2000
St. Clair Shores, Michigan 48080
(586) 778-7778

*LAW OFFICES*
**IHRIE O'BRIEN**
24055 JEFFERSON AVE., SUITE 2000   ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, VLADIMIR STOJCEVSKI, Individually and as Personal Representative of the ESTATE OF DAVID STOJCEVSKI, Deceased, by and through his attorneys, IHRIE O'BRIEN by ROBERT D. IHRIE and HAROLD A. PERAKIS, and for his Complaint, states unto this Honorable Court as follows:

## GENERAL ALLEGATIONS

1.      Plaintiff, VLADIMIR STOJCEVSKI (hereinafter VLADIMIR), is the duly appointed Personal Representative of the ESTATE OF DAVID STOJCEVSKI, (hereinafter referred to as Estate) in Macomb County Probate Court, and is and was a resident of Macomb County in the State of Michigan.

2.      At all times relevant to this lawsuit, Defendant, COUNTY OF MACOMB, (hereinafter MACOMB), is a political subdivision of the State of Michigan duly organized and carrying out governmental functions pursuant to the laws of Michigan, one of the functions being to organize, operate, staff and supervise its detention center commonly known as Macomb County Jail/Macomb County Correctional Facility.

3.      At all times relevant to this lawsuit, Defendant, SHERIFF ANTHONY M. WICKERSHAM (hereinafter WICKERSHAM), was the Sheriff of Macomb County and the policy maker for the Macomb County Jail/Macomb County Correctional Facility (hereinafter Macomb County Jail) and represented the ultimate repository of law enforcement power in the Macomb County Jail. Defendant Wickersham was acting within the scope of his employment and under color of state law in his official capacity and is being sued in his official capacity as policymaker and Sheriff, as well as in his individual capacity.

LAW OFFICES

IHRIE O'BRIEN

24055 JEFFERSON AVE., SUITE 2000   ST. CLAIR SHORES, MI 48080

TELEPHONE (586) 778-7778

4.      At all times relevant to this lawsuit, including but not limited to the dates of June 11, 2014 through June 27, 2014, Defendant WICKERSHAM had the charge and custody of the Macomb County Jail and formulated and oversaw policies, practices, regulations, protocols, and customs therein and had the authority for hiring, screening, training, supervising, and disciplining of deputies, corrections officers and medical staff.

5.      At all times relevant to this lawsuit, including but not limited to June 11, 2014, through June 27, 2014, Defendant, Michelle M. Sanborn (SANBORN), was believed to be a resident of Macomb County in the State of Michigan and was the jail administrator and an employee of Macomb County.

6.      At all times relevant to this lawsuit, Defendant Barb Caskey (CASKEY) was believed to be a resident of Macomb County in the State of Michigan and was Director of Macomb County Community Corrections and was an employee of Macomb County.

7.      At all times relevant to this lawsuit, Defendant Lisa Bingham (BINGHAM) , was believed to be a resident of Macomb County in the State of Michigan and at all times pertinent hereto was the supervisor of Community Service-MARCH within the Macomb County Community Corrections and was an employee of Macomb County.

8.      At all times relevant to this lawsuit, Defendants, Sheriff Deputies (first name unknown) LICAVOLI, M. MURPHY, (first name unknown) JOHNSON, KEITH PETHKE, PAUL HARRISON, JOHN TALOS, WILLIAM MISANY, STEVEN MARSCHKE, MATTHEW SALAS, KELLY KULLMAN, WILLIAM HORAN, J. DEHATE, (first name unknown) CAMPAU, (first name unknown) KRUGER, (first name unknown) PISZCZEK, SGT. PATRICK JOHNSON, and various DEPUTY JOHN/JANE DOE's to be specifically

LAW OFFICES
IHRIE O'BRIEN
24055 JEFFERSON AVE., SUITE 2000   ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778

identified during litigation processes, are believed to be residents of Macomb County in the State of Michigan were deputies and employees of Macomb County.

9.     At all times relevant to this lawsuit, Defendant, CORRECT CARE SOLUTIONS, LLC, (hereinafter CCS) is a foreign limited liability company licensed to do business in Michigan, with its principal place of business located in the State of Tennessee. At all times pertinent hereto, CCS was and is obligated by contract to provide managed healthcare, medical care, and/or mental health care to Macomb County Jail inmates generally, and to David Stocjevski, (hereinafter David) an inmate in said facility from June 11, 2014 through June 27, 2014, and Vladimir Stojcevski (hereinafter Vladimir), an inmate in said facility from June 11, 2014 to June 23, 2014. Upon information and belief, CCS helped to formulate the policies, procedures and staff training related to medical care and/or mental health care at the Macomb County Jail and to implement those protocols.

10.     At all times relevant to this lawsuit, Defendants' medical and/or mental health clinicians and health care providers, MONICA CUENY, TIFFANY DELUCA, KELLY MANN, CHANTALLE BROCK, DEEANN PAVEY, DANYELLE NELSON, MICAL BEY-SHELLEY, VICKY BERTRAM, H. ERHLICH, MONICA VANDAMME, JACLYN CUBANSKI, AMANDA BISHOP, CYNTHIA DEVIEW, SARAH BREEN, and DR. LAWRENCE SHERMAN, and various JOHN/JANE DOE medical and/or mental health clinicians and health care providers to be specifically identified during litigation processes, are believed to be residents of Macomb County in the State of Michigan and were agents and/or employees of CCS and/or Macomb County, and provided nursing and/or medical and/or mental health services at the Macomb County Jail including, but not limited to, inmates such as the Plaintiffs, David and Vladimir Stojcevski.

LAW OFFICES
IHRIE O'BRIEN
24055 JEFFERSON AVE., SUITE 2000   ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778

11.     At all times relevant to this lawsuit the individually named Defendants and/or JANE or JOHN DOES were employees of Macomb County, and/or CCS, acting within the scope of their employment.

12.     This action arises under the United States Constitution and under the laws of the United States Constitution, particularly under the provisions of the Fourth, Eighth and Fourteenth Amendments of the United States Constitution and under the laws of the United States, particularly the Civil Rights Act, Title 42 of the United States Code, Sections 1983 and other rights afforded under State of Michigan and federal statutes and state and federal common law.

13.     This cause of action arose in the City of Mount Clemens, County of Macomb, State of Michigan.

14.     This Court has jurisdiction over this cause of action under the provisions of Title 28 of the United States Code, sections 1331, 1332 and 1342 and pendant jurisdiction over state claims that arise out of the nucleus of operative facts common to Plaintiff's federal claims.

15.     All of the acts of Defendants, through its employees and agents, as set forth, were done under the color and pretense of the statutes, ordinances, regulations, laws, customs, and usage of the State of Michigan, and were done by virtue of and under the authority of the Defendants as employees and agents.

16.     Defendants Macomb County and CCS are responsible for, and does in fact, hire, train, supervise and instruct corrections officers, detention officers and nurses/mental health staff of all grades in the performance of their duties.

17.     The amount in controversy exceeds $75,000.00, exclusive of Plaintiff's claims for costs, attorney fees, interest and punitive damages.

LAW OFFICES
IHRIE O'BRIEN
24055 JEFFERSON AVE., SUITE 2000   ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778

18.     On or about June 11, 2014, Vladimir was brought to the Macomb County Jail from the 39th District Court to serve a thirty (30) day jail sentence or pay $655.00 for failing to appear on a Driving a Vehicle while License Suspended charge.

19.     On or about June 11, 2014, Vladimir's brother, David, Deceased, was brought to the Macomb County Jail from the 39th District Court to serve a thirty (30) day jail sentence or pay $772.00 for failing to appear on the civil infraction charge of Careless Driving.

20.     Upon their arrival at the Macomb County Jail, both Vladimir Stojcevski and his brother David Stojcevski were pat-searched and stripped of their belongings by various Macomb County Sheriff deputies identified above individually or as John/Jane Doe deputies.

21.     After both Vladimir Stojcevski and David Stojcevski were booked, both underwent the intake/screening process, which consists of a question and answer interview session between the inmate and correction officer(s) and/or medical and/or mental health care clinicians, whereby certain documents were prepared by various named Defendant Deputies and/or John/Jane Doe deputies, as well as various named Defendant medical and/or mental health care clinicians or providers and/or JOHN/JANE DOE medical and/or mental health clinicians and health care providers, which include, but may not be limited to, the following:

  a.     a Defendant CCS Authority to Act form dated June 11, 2014, assigning David Alan Arft to file a Medicaid Application on behalf of both Vladimir and David Stojcevski;

  b.     a Macomb County Sheriff's Office Inmate History Classification document;

  c.     a Defendant CCS Patient Profile-Summary;

  d.     a CCS Receiving Screening form;

LAW OFFICES
IHRIE O'BRIEN
24055 JEFFERSON AVE., SUITE 2000   ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778

LAW OFFICES

IHRIE O'BRIEN

24055 JEFFERSON AVE., SUITE 2000   ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778

    e.    a CCS Intake Nursing Interventions-COWS for Opiate Withdrawal (or for Poly-substance Withdrawal as directed by HCP);

    f.    CCS Progress Note(s) all prepared by various named Defendant Deputies and Defendant medical and/or mental health care clinicians; and

    g.    a Scoring Sheet-COWS for Opiate Withdrawal (or for Poly-Substance Withdrawal as directed by HCP)

prepared and signed by above named Defendant CCS employees, and potentially other unidentified medical and/or mental health clinicians or providers identified here as Defendants John/Jane Doe.

22.    Upon information and belief, the above-named documents include questions that are designed and intended to aid in the decisions of assigning temporary cell assignments, appropriate supervisor levels within the facility, and to provide adequate medical and/or mental health care for the inmates.

23.    Upon information and belief, completion of these documents requires: (a) direct interview between the inmates Vladimir and David Stojcevski and intake Deputies, other jail personnel, and medical and/or mental health care clinicians or providers; and (b) specific observation of the inmate, at the time of intake by the intake Deputies, other unidentified jail personnel, and medical and/or mental health care clinicians or providers.

24.    All sections of the form are to be completed by asking the inmate specific listed questions, and gathering any other information that may be helpful in completing those forms.

25.    During the initial processing of David by the various jail personnel, as well as CCS employees or agents, certain facts and determinations were reached by the jail personnel and CCS employees or agents, by way of conversations with David, including but not limited to:

a.  David's blood pressure was determined to be 120/84, his pulse rate was 97, respiratory rate was measured at 12, his temperature was 98.30, his height was 5' 10" his weight was 195 pounds, and David had a Body Mass Index (BMI) of 28;

b.  David had been prescribed Methadone, 60 mg q.i.d. prior to incarceration, a fact that, upon information and belief was not verified or confirmed by jail personnel or CCS employees or agents through the MAPS system, or through communication with the pharmacies that prescribed such medication;

c.  David did have Medicaid Health Insurance;

d.  David was classified at "3 Minimum" Status;

e.  David had a potential for withdrawal, thereby resulting in a "COWS" being initiated, as well as an educational talk to David about opiate withdrawal;

f.  By visual observation, David's body had an abrasion on the left elbow;

g.  Recommended contacting HCP (Health Care Provider) on-call immediately for any of the following: seizures; delirium; Patient appears dehydrated or otherwise clinically unstable;

h.  Suicide Potential Screening required no referral to MH (Mental Health) for suicide watch;

i.  Psychiatric Screening confirmed that there was no current pyschotropic medications, no history of psychiatric hospitalization, and no history of outpatient mental health treatment;

      j.      David's Current Mental Status included: Alert orientation, Affect appropriate, Logical thought processes, Speech Appropriate, Mood Appropriate, Activity Appropriate, and no Hallucinations.

26.      On or about June 11, 2014 at 4:23 p.m., David was escorted to the medical office in booking to be screened by the nursing staff. Defendant TIFFANY DELUCA received information that David was taking the medication Methadone prescribed by a physician, which Defendant DELUCA failed to verify. Defendant DELUCA also recognized that David "showed obvious physical signs of drug abuse." At the conclusion of the medical receiving screening form Defendant DELUCA recommended placement of David in a Medical Detox Unit, and placed David on a detoxification setting/protocol.

27.      During the initial processing of Vladimir by the various jail personnel, as well as CCS employees or agents, certain facts and determinations were reached by the jail personnel and CCS employees or agents, by way of conversations with Vladimir, including but not limited to:

      a.      Vladimir's blood pressure was determined to be 110/84, his pulse rate was 64, respiratory rate was meansured at 12, his temperature was 98.30, his height was 5' 6", and his weight was 165 pounds;

      b.      Vladimir had been prescribed Neurontin, Klonopin, and Norco prior to incarceration, a fact that, upon information and belief was not verified by jail personnel or CCS employees or agents through telephone calls or on-line communication with pharmacies or the Michigan Automated Prescription System (MAPS) created for law enforcement personnel such as all Defendants herein;

      c.      Vladimir did not have Health Insurance;

LAW OFFICES
IHRIE O'BRIEN
24055 JEFFERSON AVE., SUITE 2000   ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778

    d.      Vladimir was placed in Holding Cell No. 3 (HC3), was then transferred to a room commonly known as the "day room" for approximately 2 days, and on or about June 14, 2014  was placed in the Detoxification Unit of the Macomb County Jail, Detoxification Cell No. 2 (DC02);

    e.      Suicide Potential Screening required no referral to MH (Mental Health) for suicide watch;

    f.      Vladimir's Mental Status included: Alert orientation, Affect appropriate, Logical thought processes, Speech Appropriate, Mood appropriate, Activity appropriate, and no Hallucinations.

### SPECIFIC ALLEGATIONS REGARDING
### PLAINTIFF DAVID STOJCEVSKI, DECEASED

28.    Plaintiff restates and re-alleges the allegations contained in paragraphs 1 through 27 as though fully set forth herein.

29.    Upon information and belief, after David was recommended for the Medical Detoxification Unit in the Macomb County Jail,  David was placed in Holding Cell No. 4 in the Jail booking area for approximately 29 hours, at which time David was moved to second floor cell 2B01 on June 12, 2014. David's housing assignment remained 2B01 until he was placed in the mental health unit in Mental Health Cell No. 1 (hereinafter MH01) on June 17, 2014.

30.    During June 12, 2014 through June 15, 2014, various Defendant CCS employees gave David his COWS assessments, and on June 15, 2014, Defendant DEEANN PAVEY noted that David's Detox was "complete". David remained in cell 2B01 until June 17, 2014.

31.    On June 17, 2014,  Defendant LICAVOLI found David laying on his back in his cell, unable to speak and blinking his eyes.  David was then taken to ME05 for medical examination at 7:50 a.m. on June 17, 2014.

LAW OFFICES
IHRIE O'BRIEN
24055 JEFFERSON AVE., SUITE 2000   ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778

32.     After the medical examination, David was returned to 2B01. Sometime in the afternoon of June 17, 2014, Defendant Corrections Deputy CAMPAU filed a referral to mental health noting that David was "hallucinating talking to people that are not there and also stated that he died earlier today." David was then placed in MH01 on or about 3:48 p.m. on June 17, 2014.

33.     On or about June 17, 2014, Defendant BERTRAM observed David sitting on the floor of MH01 and David was commenting that: "all his organs, but 10 percent of his heart was removed and his arms shredded a couple days ago," while David was in the jail. During that same interaction and conversation between Defendant BERTRAM and David, Defendant BERTRAM learned and became aware that before incarceration in the Macomb County Jail, David "was taking 4mg of Xanax daily for pain and oxycodones for pain."

34.     David was also observed by Defendant HARRISON "twitching on the floor " of MH01, and in response to the observations noted above, Defendant BREEN took David's vitals, which did not include his weight measurement, and "cleared" David.

35.     On June 18, 2014 Defendant Nurse Supervisor CUENY performed a medical assessment on David, learned from David that "he took Klonopin 2-3 tabs at home for anxiety, that it was prescribed, but he could not recall the name or location of the pharmacy." David also informed CUENY that he had previously been hospitalized for anxiety, but could not tell Defendant CUENY what hospital he had been in. Defendant CUENY discussed that assessment with Defendant DR. SHERMAN, but "no new orders were received at this time". Defendant CUENY recommended that David remain housed in "MH-high observation, continue with COW protocol as ordered".

36.     Notwithstanding the above-cited information received directly from David on June 17, 2014 and June 18, 2014 by Defendant CUENY, Defendant BERTRAM, and Defendant DR.

LAW OFFICES
IHRIE O'BRIEN
24055 JEFFERSON AVE., SUITE 2000   ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778

SHERMAN, and notwithstanding the observations by Defendants LICAVOLI, CAMPAU, and HARRISON, and potentially other unidentified jail personnel and Defendant CCS employees and agents, COW protocols were not commenced, medication was not ordered, and jail personnel noted above ignored David's pleas for necessary medical care and treatment.

37.     Three to four days later, on June 21, 2014, David specifically asked Defendant BROCK if he would be receiving the medication within the jail, Defendant BROCK informed David that the "medication has not been ordered at this time".

38.     Notwithstanding the clear knowledge cited above and confirmed in Defendants' records, regarding David's medications prescribed to him prior to incarceration, all of the named Defendants herein were so deliberately indifferent to David's mental health and medical needs, that the Defendants, named and unnamed in this litigation, monitored, watched and observed David spend the final ten days of his life suffering excruciating benzodiazepine withdrawal symptoms.

39.     Notwithstanding the clear knowledge, cited above and confirmed in Defendants' own records, regarding David's medications prescribed to him prior to incarceration, all of the named Defendants herein were so deliberately indifferent to David's mental health and medical needs that not a single named or unnamed Defendant made one phone call or internet inquiry the State of Michigan MAPS data system, that would have readily informed all of the Defendants that David was indeed telling the truth about his need for the three medications prescribed for him in the months leading up to his incarceration–Xanax, Klonopin, and Oxycodone–the first two of which are benzodiazepine medications used to treat anxiety and drug withdrawal, while the third is used for pain relief.

LAW OFFICES
IHRIE O'BRIEN
24055 JEFFERSON AVE., SUITE 2000   ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778

40.     Instead of taking any of the actions cited above, the Defendants herein, whether identified at this time or not, chose individually and/or jointly, to intentionally, and with deliberate indifference to David's legitimate medical and mental health needs, ignore those needs.

41.     As Defendants' own records reflect, all of the Defendants, named or as yet unidentified, jointly and with deliberate indifference failed to act in any meaningful way to save David's life, until it was far too late for David to survive the ravages of benzodiazapene withdrawal, the cause of David's death.

42.     As Defendants' own records and videos demonstrate, Defendants watched David as his mental and medical health deteriorated so dramatically during the final ten days of his life in Defendants' jail, that David lost at least 50 pounds of his 195 pound weight during the sixteen (16) days of his incaraceration, a weight loss that Defendants knew or should have known was compromising David's ability to survive during Defendants' self-ordered 24 hour video monitoring of David from June 17, 2014 through June 27, 2014.

43.     Defendants' actions and inactions demonstrated deliberate indifference to David's mental and physical well being as David suffered numerous days of excruciating pain and misery caused by the visibly apparent symptoms of benzodiazapene withdrawal, that ultimately took his life.

44.     Moreover, Defendants' videos demonstrate David's excruciating pain and suffering, inflicted with deliberate indifference by Defendants during the many days prior to his June 27, 2014 death.

45.     Defendants' knew or should have known of David's need for immediate and emergency medical care many days before David died on June 27, 2014.

LAW OFFICES
IHRIE O'BRIEN
24055 JEFFERSON AVE., SUITE 2000   ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778

46.     Defendants' deliberate indifference to David's constitutionally protected rights is further demonstrated by Defendants' MACOMB COUNTY, WICKERSHAM, CASKEY and Defendant BINGHAM's failure to meet their legal obligations to honor and implement a June 19, 2014 Amended Disposition Order from the 39th District Court whereby David was to be released upon his enrollment in the Community Corrections March Program, a program that allows for release of inmates such as David to perform community services in place of further jail incarceration.

47.     By failing to meet their obligation to fully implement the afore-cited court order, Defendants cited above caused David to stay in the Macomb County Jail, contrary to the 39th District Court Amended Disposition Order allowing for David's release.

48.     Despite clear and unequivocal knowledge of David's need for medication, his delicate medical condition and deteriorating mental state, the Defendants, named and unnamed, with deliberate indifference did not initiate or take proper precautions to protect David or to properly and adequately monitor David's physical health.

49.     Defendants, and/or their employees and agents ignored David's symptoms and left him in the holding cell without further monitoring and/or assistance.

50.     Defendants and/or their employees and agents were obligated to perform routine security checks on David as it relates to his prescription drug withdrawals.

51.     On or about June 27, 2014, at approximately 5:20 p.m., Defendants found David struggling to breathe, and despite Defendants all-too-late and ineffective efforts to revive David, he was rushed by ambulance from Macomb County Jail to McLaren Regional Hospital in Mt. Clemens, Michigan. David's weight was measured at 145 pounds by the emergency medical technicians in the ambulance. David's confirmed weight loss during the 16 days of incarceration was fifty (50) pounds, a total weight loss of over twenty-five (25%) of his total body weight.

LAW OFFICES
IHRIE O'BRIEN
24055 JEFFERSON AVE., SUITE 2000   ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778

52.     Merely one hour and thirty-five minutes after several Defendants responded to David's desperate condition, Defendant was pronounced dead at McLaren Regional Hospital at 6:55 p.m.

53.     David's death certificate dated July 3, 2014, and amended on September 10, 2014 found that David's cause of death was "Acute Withdrawal from Chronic Benzodiazepine, Methadone and Opiate Medications", and that the approximate interval between onset of the cause of death and the death itself was "Weeks".

54.     David's autopsy report reflects a final diagnosis and cause of death as: "Acute Withdrawal from Chronic Benzodiazepine, Methadone and Opiate Medications, Dehydration with hypernatremia, and Seizure/seizure-like activity".

## SPECIFIC ALLEGATIONS REGARDING PLAINTIFF VLADIMIR STOJCEVSKI

55.     Plaintiff restates and re-alleges the allegations contained in paragraphs 1 through 54 as though fully set forth herein.

56.     Upon information and belief, Vladimir was placed in Holding Cell No. 3 (HC-3) in the Jail booking area for approximately 2 days, at which time Vladimir was transferred to Detoxification Unit Cell No. 2 on or about June 14, 2014. Vladimir's housing assignment remained in the Detoxification Unit until June 16, 2014.

57.     From on or about June 11, 2014 through June 15, 2014 Vladimir had seizures accompanied by vomiting spells and incontinence.

58.     Notwithstanding Vladimir's numerous requests to be allowed to clean himself, and to examine his lower extremity for injury or disease, various Defendant CCS employees and Macomb County jail personnel refused to allow Vladimir to properly wash his lower extremity and behind, and refused Vladimir adequate medical care, the refusals evincing the Defendants' deliberate

LAW OFFICES
IHRIE O'BRIEN
24055 JEFFERSON AVE., SUITE 2000   ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778

indifference to Vladimir being exposed to a substantial risk of physical and mental harm related to Defendants refusals noted above.

59.     For several days, and as a result of being refused the very basic request for medical care, and to cleanse his body to remove the vomit and feces from his upper and lower extremities, Vladimir suffered physical and mental injury, great indignity, embarrassment, and ridicule within the Macomb County Jail from inmates, as well as Defendants' employees and agents.

60.     On or about June 23, 2014, Defendants heeded Vladimir's numerous and long-standing requests for medical care, and Defendant WICKERSHAM and Defendant CCS decided to release Vladimir from the jail on June 23, 2014 to the McLaren Regional Hospital for medical examination, many days after Vladimir demonstrated the need for medical care that could only be performed in a hospital setting.

## COUNT I:
## ESTATE OF DAVID STOJCEVSKI, DECEASED, AND VLADIMIR STOJCEVSKI VIOLATION OF 42 U.S.C. § 1983 AND THE 8TH AND 14TH AMENDMENTS OF THE UNITED STATES CONSTITUTION

61.     Plaintiffs restate and re-allege the allegations contained in paragraphs 1 through 60 as though fully set forth herein.

62.     As citizens of the United States and a resident of Macomb County Jail located in the State of Michigan, Vladimir and David were entitled to all rights, privileges and immunities accorded to all incarcerated citizens of the State of Michigan and of the United States.

63.     At all times relevant hereto, all Defendants were acting within the course and scope of their employment with the County of Macomb and/or CCS and were acting under color of state law with the authority granted to them as corrections officers or correctional healthcare providers and/or managers and/or shift supervisors.

LAW OFFICES
IHRIE O'BRIEN
24055 JEFFERSON AVE., SUITE 2000   ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778

64.     At all times relevant hereto, pursuant to the Eighth and Fourteenth Amendments of the United States Constitution, Plaintiffs had a right to be free of cruel and unusual punishment and to receive proper and adequate medical care while incarcerated and under the custody and control of MACOMB COUNTY at the Macomb County Jail and under the supervision and control of the Defendants.

65.     At all times relevant hereto, Vladimir and David each had a right to adequate and sufficient medical care and treatment such that their medical and mental conditions would be protected, and in David's case, his life would be preserved, and that both David and Vladimir at all times would be free from needless unjustified and preventable pain, suffering and deterioration of their health and well-being.

66.     At all times relevant hereto, Defendants with malice, recklessness, and a callous and deliberate indifference to David's federally protected rights to be free of cruel and unusual punishment and to medical care that adequately treated David's serious medical needs, knowingly allowed David to suffer through withdrawal symptoms, which ultimately resulted in his death, without adequate nourishment, fluids, without necessary medication, and without appropriate medical/mental health care, all of which combined in whole or in part to cause pain, suffering, deterioration of health and ultimately the death of David, that took place over the time frame noted above.

67.     The Defendants specifically and with deliberate indifference refused to provide the very basics of life to David during the time frame noted above, notwithstanding the Defendants knowledge of the obvious and excruciating pain being suffered by David during the throws of his benzodiazepine withdrawal that lasted throughout the time he was incarcerated.

68.     The actions cited above violated a clearly established constitutional rights of which Defendants were aware or should have been aware, namely, inter alia, the right to be free of cruel and unusual punishment and the right to medical care that adequately treated David's serious medical needs and Vladimir's serious medical needs caused by the Defendants' knowing allowance of unsanitary conditions to persist.

69.     The Defendants restricted David's access to a basic necessity to maintain his life, that being medication that had been specifically prescribed by his physician prior to incarceration.

70.     The Defendants, failed to communicate information to supervisors and others in charge of the care and custody of David concerning his medical and living conditions in his cell.

71.     The Defendants, ignored facts that David was exhibiting obvious signs of withdrawal, starvation, and dehydration and kept David locked in his cell immediately prior to his death.

72.     The actions of the Defendants violated a clearly established constitutional right of which Defendants were aware or should have been aware, namely, inter alia, Plaintiffs right to adequate medical care and treatment for Plaintiff's serious medical needs.

73.     The actions of the Defendants, created a substantial risk of harm to the health and safety of David.

74.     The Defendants, on numerous occasions failed to obtain, summon or follow through with requests for medical care and treatment after observing obvious signs and symptoms of withdrawal, dehydration, and starvation/anorexia suffered by David.

75.     David's health and well-being began to deteriorate as a result of withdrawal from medications as well as not receiving fluids and nourishment. The Plaintiff exhibited numerous

LAW OFFICES
IHRIE O'BRIEN
24085 JEFFERSON AVE., SUITE 2000   ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778

symptoms of withdrawal, all of which were readily observable and visible to all Defendants during a minimum of ten days prior to David's death.

76.     Many days prior, and shortly before David's death on June 27, 2014, David was experiencing a medical emergency, brought upon by the conditions identified above. The medical emergency manifested itself in the form, among other things, of anxiety, profound agitation and restlessness, suicide ideation, feelings of unreality, dysphoria, hot and cold spells, hallucinations, increased urinary frequency, loss of appetite and weight loss, anorexia, muscle spasms, cramps or fasciculations, perspiration, photophobia, rapid eye movement, delirium tremens, convulsions, unusual and incoherent behavior, and apathy.

77.     During the time that David's health continued to deteriorate, the various Defendants, pursuant to the Eighth Amendment, were required to provide and/or obtain adequate medical care for David, including, but not limited to electrolyte replacement, increased fluid intake, increased salt intake, intravenous re-hydration, cardiac monitoring and/or hospitalization. To the contrary, however, the various Defendants with malice, recklessness and callous and deliberate indifference failed to provide or obtain care and treatment necessary to save David's life.

78.     The actions and/or omissions of the various Defendants noted above constituted a deliberate indifference to the serious medical needs of David and Vladimir and demonstrate a reckless, willful and wanton disregard for the health and safety of David and Vladimir thereby denying both Plaintiffs the constitutional right to be free from cruel and unusual punishment as provided by the Eighth Amendment to the United States Constitution.

79.     As the direct and proximate result of the actions and/or omissions of the Defendants, David suffered great physical pain, discomfort, loss of mental capacity, humiliation, degradation and suffering.

LAW OFFICES
IHRIE O'BRIEN
24055 JEFFERSON AVE., SUITE 2000   ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778

80.     As the direct and proximate result of the actions and/or omission of the Defendants, Vladimir suffered great physical and mental injury, indignity, embarrassment, and ridicule within the Macomb County Jail from inmates, as well as Defendants' employees and agents.

81.     Upon information and belief, Vladimir also suffered severe pain, discomfort and injury related to Defendant's denial of allowing him to adequately and timely cleanse himself.

82.     As the direct and proximate result of the actions and/or omissions of the Defendants, David suffered an excruciatingly painful and slow death on June 27, 2014.

83.     As the direct and proximate result of the acts and/or omissions of the various Defendants, Plaintiff Estate and Vladimir Stojcevski have sustained and are entitled to compensation for the following damages, including, but not limited to:

a.     Reasonable medical, hospital, funeral, and burial expenses;

b.     Economic costs and/or damages (past, present and future);

c.     Loss of love;

d.     Reasonable compensation for the conscious pain and suffering experienced by David and Vladimir while they were conscious during incarceration;

e.     Loss of financial support;

f.     Loss of service;

g.     Loss of gifts or other valuable gratitude's;

h.     Loss of sibling companionship and guidance;

i.     Loss of expected inheritance;

j.     Loss of society and companionship; and

k.     Any and all other damages identified through the course of discovery otherwise available under Michigan Wrongful Death Act, *MCLA* § 600.2922.

LAW OFFICES
IHRIE O'BRIEN
24055 JEFFERSON AVE., SUITE 2000   ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778

84.     By the aforementioned actions and/or omissions, Defendants have deprived Vladimir and David of the rights secured by the Eighth and Fourteenth Amendment to the United States Constitution and of 42 U.S.C. § 1983.

WHEREFORE, Vladimir Stojcevski, as Personal Representative of the Estate of David Stojcevski, Deceased, and Vladimir Stojcevski, individually, respectfully request that this Honorable Court enter judgment in Plaintiffs favor and against all Defendants, as follows:

A.     Compensatory non-economic and economic damages in excess of $75,000.00, including but not limited to all damages recoverable under the United States Constitution and/or 42 U.S.C. § 1983 and/or the laws of the State of Michigan including but not limited to the Michigan Wrongful Death Act;

B.     Punitive damages;

C.     Reasonable attorney fees, costs and interest; and

D.     Such other and further relief as appears reasonable and just under the circumstances.

## COUNT II:
### ESTATE OF DAVID STOJCEVSKI, DECEASED
### DENIAL OF MEDICAL TREATMENT
### FOR SERIOUS MEDICAL NEEDS

85.     Plaintiffs restate and re-allege the allegations contained in paragraphs 1 through 84 as though fully set forth herein.

86.     At all times relevant hereto, while Defendants were acting under color of statute, ordinances, regulations and/or customs of the State of Michigan, Defendants subjected David to a deprivation of his rights, privileges and immunities secured by the Constitution and laws of the United States and the State of Michigan.

87.     Pursuant to 42 U.S.C. § 1983, as well as the Eighth and Fourteenth Amendments to the United States Constitution, Defendant, County of Macomb, and the individually named

LAW OFFICES
IHRIE O'BRIEN
24055 JEFFERSON AVE., SUITE 2000   ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778

Defendants owed David a duty to act prudently and with reasonable care, and to otherwise avoid cruel and unusual punishment.

88. Defendants and the individually named Defendants deprived David of his clearly established rights, privileges and immunities in violation of the Fourth, Eighth and Fourteenth Amendments of the Constitution of the United States, and 42 U.S.C. § 1983.

89. Defendants, and the individually named Defendants owed duties to the County's inmates, particularly to David, to act prudently and with reasonable care in the formulation of its policies and procedures relative to providing him prompt and immediate medical treatment, as well as to train, test, evaluate, review and update their corrections officers, medical personnel, nursing staff, and mental health personnel so as to function in a reasonable manner and in conformity with the laws of the United States and of the State of Michigan relative to providing inmates and patients with necessary, life sustaining, and life saving treatment and care.

90. Defendants CCS, Macomb County, and the individually named Defendants, objectively knew that David was at high risk for the consequences of benzodiazepine withdrawal, including a high risk of death, by virtue of the following, including, but not limited to:

    a.    Information received from David during his incarceration which confirmed that David had a highly significant risk of benzodiazepine withdrawal, and that he was dependent on medications to control his thoughts, mood and behavior;

    b.    Defendants observations of David during 24-hour video monitoring of the numerous symptoms being suffered by David during the ten days prior to his death, all or most of which were easily identifiable as symptoms of

LAW OFFICES
IHRIE O'BRIEN
24055 JEFFERSON AVE., SUITE 2000   ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778

benzodiazepine withdrawal, including, but not limited to, all of the symptoms identified in this Complaint;

c.      Any other reasons which may become known during the course of discovery.

91.     The conduct of Defendants, and the individually named corrections officers, medical staff, nursing staff, and mental health staff, all acting within the scope of their employment, exhibited a deliberate indifference to David's physical, mental and emotional health, in violation of David's civil rights, and thereby imposed cruel and unusual punishment on David in violation of David's Eighth Amendment rights in the following ways:

a.      Failing to adequately screen and classify David;

b.      Falsifying documents;

c.      Failing to care for the basic medical and mental health needs of inmates, specifically David;

d.      Failing to confirm and procure David's prescribed medications;

e.      Failing to make a referral to the appropriate mental health services so that proper care and treatment could be administered to David;

f.      Failing to treat David's deteriorating mental/physical state by seeking immediate medical attention or to transfer him to a hospital/mental facility;

g.      Failing to provide for appropriate and reasonable medical and/or mental treatment of inmates;

h.      Failing to provide an adequate number of deputies/correction officers/ medical personnel/mental health personnel and nursing personnel for inmate supervision;

Page 23 of 38

LAW OFFICES
IHRIE O'BRIEN
24055 JEFFERSON AVE., SUITE 2000   ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778

i.     Failing to screen deputies/correction officers/medical personnel/mental health personnel/nursing staff to confirm their competency and satisfactory performance, both before and after being engaged;

j.     Failing to monitor, train, discipline or control deputies/correction officers/ medical personnel/mental health personnel/nursing staff after derelictions in their performance became known, or should have become known;

k.     Failing to refrain from intentionally denying or delaying access to appropriate medical care/mental health care/nursing care ;

l.     Acting with gross negligence, deliberate indifference or willful disregard of David's constitutional rights;

m.    Failing to readily identify David's excessive weight loss during his incarceration, and to respond accordingly; and

n.     Any and all other breaches that become known during the course of discovery.

92.    As the direct and proximate result of the above cited violations of David's civil rights by Defendants, the Estate of David Stojcevski incurred and is entitled to compensation for the following damages, including, but not limited to:

a.     Reasonable medical, hospital, funeral, and burial expenses;

b.     Economic costs and/or damages (past, present and future);

c.     Loss of love

d.     Extreme conscious pain and suffering undergone by David while he was incarcerated;

e.     Loss of financial support;

f.      Loss of service;

g.      Loss of gifts or other valuable gratitude's;

h.      Loss of sibling companionship and guidance;

i.      Loss of expected inheritance;

j.      Loss of society and companionship; and

k.      Any and all other damages identified through the course of discovery otherwise available under the Michigan Wrongful Death Act, *MCLA* § 600.2922.

WHEREFORE, Vladimir Stojcevski, as Personal Representative of the Estate of David Stojcevski, Deceased, respectfully requests that this Honorable Court enter judgment in the Estate's favor and against Defendants, for the following relief:

A.      Compensatory non-economic and economic damages in excess of $75,000.00, including but not limited to all damages recoverable under the United States Constitution and/or 42 U.S.C. § 1983 and/or the laws of the State of Michigan including but not limited to the Michigan Wrongful Death Act;

B.      Punitive damages;

C.      Reasonable attorney fees, costs and interest; and

D.      Such other and further relief as appears reasonable and just under the circumstances.

**COUNT III:**
**ESTATE OF DAVID STOJCEVSKI, DECEASED AND VLADIMIR STOJCEVSKI**
**GROSS NEGLIGENCE, INTENTIONAL, WILLFUL AND WANTON CONDUCT**

93.     Plaintiffs restate and re-allege the allegations contained in paragraphs 1 through 92 as though fully set forth herein.

94.     At all times relevant hereto, David and Vladimir were incarcerated at the Macomb County Jail and at all times Defendants were acting and/or interacting with David and Vladimir within the scope of their employment as employees and/or agents of MACOMB COUNTY, at the Macomb County Jail.

95.     At all times relevant hereto, the Michigan Constitution, Michigan statutes and/or Michigan common law, and the special relationship that existed between David and Vladimir and the Defendants, required Defendants to provide David and Vladimir adequate medical care, mental health care, and nursing care or treatment and to act with ordinary care for the safety of David and Vladimir.

96.     Defendants breached their duties by acting with gross negligence, as defined in MCL 691.1407(2)( c), and with recklessness, intentionality, and willful wantonness and deliberate indifference as to whether harm to David and Vladimir would result by:

(A)     keeping David in a cell or holding area without adequate nourishment, fluids or means of re-hydration, and without providing medication that would prevent or limit withdrawal symptoms as suffered by David, all of which, in whole or in part and in combination with Defendants actions detailed in this Complaint, caused serious harm, excruciating pain and suffering, and death to David; and

(B)     keeping Vladimir in an unsanitary environment, as detailed above, by refusing his numerous pleas to clean himself during his incarceration, causing Vladimir all the emotional, psychological and physical damages and injuries cited in this Complaint;

97.     At all times relevant hereto, Defendants and the individually named Defendants were grossly negligent in one or more of the following ways:

a.     Failing to adequately screen and classify David;

Page 26 of 38

b.      Falsifying documents;

c.      Failing to care for the basic medical and mental health needs of inmates, specifically David;

d.      Failing to confirm and procure David's prescribed medications;

e.      Failing to make a referral to the appropriate mental health services so that proper care and treatment could be administered to David;

f.      Failing to treat David's deteriorating mental/physical state by seeking immediate medical attention or to transfer him to a hospital/mental facility;

g.      Failing to provide for appropriate and reasonable medical and/or mental treatment of inmates;

h.      Failing to provide an adequate number of deputies/correction officers/ medical personnel/mental health personnel and nursing personnel for inmate supervision;

i.      Failing to screen deputies/correction officers/medical personnel/mental health personnel/nursing staff to confirm their competency and satisfactory performance, both before and after being engaged;

j.      Failing to monitor, train, discipline or control deputies/correction officers/medical personnel/mental health personnel/nursing staff after derelictions in their performance became known, or should have become known;

k.      Failing to refrain from intentionally denying or delaying access to appropriate medical care/mental health care/nursing care ;

LAW OFFICES
IHRIE O'BRIEN
24055 JEFFERSON AVE., SUITE 2000   ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778

l.      Acting with gross negligence, deliberate indifference or willful disregard of David's and Vladimir's constitutional rights, as stated herein;

m.      Failing to readily identify David's excessive weight loss during his incarceration, and to respond accordingly; and

n.      Any and all other breaches that become known during the course of discovery.

98.      As the direct and proximate result of the above cited violations of David's and Vladimir's  civil rights by Defendants, the Estate of David Stojcevski and Vladimir Stojcevski have sustained and is entitled to compensation for the following damages, including, but not limited to:

a.      Reasonable medical, hospital, funeral, and burial expenses;

b.      Economic costs and/or damages (past, present and future);

c.      Loss of love

d.      Extreme conscious pain and suffering undergone by David and Vladimir while he was  incarcerated;

e.      Loss of financial support;

f.      Loss of service;

g.      Loss of gifts or other valuable gratitude's;

h.      Loss of sibling companionship and guidance;

i.      Loss of expected inheritance;

j.      Loss of society and companionship; and

LAW OFFICES
IHRIE O'BRIEN
24055 JEFFERSON AVE., SUITE 2000    ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778

k.      Any and all other damages identified through the course of discovery otherwise available under the Michigan Wrongful Death Act, *MCLA* § 600.2922.

WHEREFORE, Vladimir Stojcevski, Individually, and as Personal Representative of the Estate of David Stojcevski, Deceased, respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, for the following relief:

A.      Compensatory non-economic and economic damages in excess of $75,000.00, including but not limited to all damages recoverable under the United States Constitution and/or 42 U.S.C. § 1983 and/or the laws of the State of Michigan including but not limited to the Michigan Wrongful Death Act;

B.      Punitive damages;

C.      Reasonable attorney fees, costs and interest; and

D.      Such other and further relief as appears reasonable and just under the circumstances.

**COUNT IV:**
**ESTATE OF DAVID STOJCEVSKI**
**FAILURE TO TRAIN, INADEQUATE POLICIES AND/OR PROCEDURES,**
**CUSTOMS AND PRACTICES AND FAILURE TO SUPERVISE -**
**DELIBERATE INDIFFERENCE - MACOMB COUNTY AND WICKERSHAM**

99.     Plaintiffs restate and re-allege the allegations contained in paragraphs 1 through 98 as though fully set forth herein.

100.    Pursuant to 42 U.S.C. § 1983, as well as the Fourth and Fourteenth Amendments to the United States Constitution, Defendants MACOMB and WICKERSHAM owed David certain duties to properly supervise, monitor and train its correctional officers, medical staff, nursing staff, and mental health staff so as to monitor and supervise the jail's inmates so that they would detect

LAW OFFICES
IHRIE O'BRIEN
24055 JEFFERSON AVE., SUITE 2000   ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778

serious medical conditions and facilitate prompt and immediate medical, nursing, or mental health attention and/or transport to a hospital Emergency Room.

101.    That Defendants, in their representative and official capacities, have maintained a custom and policy of improper training and supervision of their employees, agents and representatives. Defendants are not protected by governmental immunity when following a policy that deprives individuals of their constitutional rights. *Monell v N.Y. City Dep't of Soc. Servs.*, 436 658/ 690-91, 692 (1978).

102.    That Defendants were aware of previous incidents where individuals who were incarcerated at the Macomb County Jail were not afforded proper medical treatment, mental health treatment, and/or nursing care, specifically as to mental health referrals, observations and adequate care for inmates withdrawing from various medications and drugs.

103.    That Defendants were aware of the custom and practice of correction officers/ deputies and/or medical staff and/or mental health staff and/or nursing staff failing to gather necessary and easily accessed information regarding inmates prescribed use of medications prior to incarceration at the Macomb County Jail.

104.    The Defendants owed David the following and duties and obligations:

    a.    To use due care and caution;

    b.    To adequately and properly promulgate guidelines and policies that comply with the requirements of 42 U.S.C. § 1983 regarding the incarceration of inmates and the supervision of inmates, especially those who are mentally and emotionally and physically unstable, or those who are taking prescribed medication for pre-existing drug-dependency conditions, psychiatric or psychological problems;

LAW OFFICES
IHRIE O'BRIEN
24055 JEFFERSON AVE., SUITE 2000   ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778

c.    To adequately and properly train and supervise deputies and employees, agents or representative of the Macomb County Jail under their supervision on the proper method of supervising prisoners and providing for their medical needs and on effectively controlling prisoners who have or are suspected of suffering from pre-existing drug-dependency conditions requiring medications, or who are suffering psychological or psychiatric problems;

d.    To adequately and properly train and supervise deputies and employees, agents or representatives of the Macomb County Jail under their supervision on the proper method of assessing the difference between real and actual symptoms of benzodiazapene withdrawal and false or "fake" symptoms of such withdrawal; and

e.    To avoid hiring or selecting individuals who it knows or should know are incapable of performing their responsibilities or who are likely to misuse or abuse the power conferred on them as employees of the Macomb County Jail, or who are so deliberately indifferent to inmates medical and mental health conditions so as to make rash and irresponsible conclusions without basis in fact pertaining to inmates presented symptoms.

105.    That Defendants breached these duties via their policies, procedures, regulations, customs and/or lack of training and thus exhibited a reckless indifference toward its prisoners and David specifically, in the following ways, including, but not limited to:

a.    Defendants' failure to staff the jail with competent medical personnel so that a mental health professional;

b.  Defendants' failure to monitor their correctional officers and medical personnel to ensure that they adequately monitor and supervise inmates who have serious medical needs;

c.  Defendants' failure to have proper policies and procedures, and training to deal with inmates in the observation cell and ensure that the policies and/or procedures are followed, which include serial examinations by competent and licensed medical, nursing and mental health personnel like registered nurses (RN), psychologists and/or Doctors, as well as its failure to ensure the correctional officers, mental health staff, and nursing staff conduct timely and adequate rounds and record their observations of the inmates every 15 minutes as required by their own policies and/or procedures;

d.  Defendants' failure to require that a nurse, doctor or mental health Professional perform a full and complete examination of a prison held in a medical observation cell, at least once per day;

e.  Defendants' failure to have proper policies and procedures, and training to deal with the potential of Macomb County and CCS employees from adopting an institutionalized "group think" mentality in the custody and care of inmates who require unique and adequate care, such as David required in this matter;

f.  Defendants' failure to have proper policies and procedures in place to deal with jail overcrowding in the high observation units of the facility;

g.  Defendants' failure to fully investigate and discipline its correctional officers and/or medical/mental health personnel who do not abide by its policies and

LAW OFFICES
IHRIE O'BRIEN
24055 JEFFERSON AVE., SUITE 2000    ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778

procedures relative to providing medical care and/or mental health care for serious conditions;

h.     All other breaches learned through the course of discovery.

106.    That Defendants trained their officials and/or employees and agents in such a reckless and grossly negligent matter, that it was inevitable that the officials would provide such inadequate care to an inmate such as David, in a monitored cell, such that Defendants' employees would watch David die a slow and painful death caused by benzodiazepine withdrawal, and associated symptoms, all of which were, or should have been obvious to Defendants' employees and agents, and which were so obvious as to make it readily apparent to any well-trained corrections officers, nursing staff, medical staff, or mental health staff that David was indeed exhibiting signs of a fatal withdrawal from prescribed benzodiazepene medications.

107.    The failure of the Defendants to provide training and supervision regarding the proper care of inmates amounts to deliberate indifference to the safety and lives of the inmates of the Macomb County Jail and particularly David.

108.    Defendant MACOMB COUNTY and WICKERSHAM are supervisory officials who knew, or in the exercise of reasonable care, should have known that individual prison officials had engaged in misconduct and other violations of the constitutional rights of prison inmates at the Macomb County Jail, more specifically David.

109.    Despite knowledge of its aforesaid pattern and practice, the Defendants failed to properly investigate the improper practices and to supervise and train the prison officials at the Macomb County Jail.

110.    Defendants developed a "hands off" policy or custom with regard to the omissions

Page 33 of 38

of individual prison officials which encouraged the individual officials to believe they could violate the constitutional rights of David with the explicit or tacit approval of the Defendants herein.

111.    Defendant Macomb County and Wickersham, acting under color of state law, authorized, tolerated, ratified, permitted, or acquiesced in the creation of policies, practices, and customs, establishing a de facto policy of deliberate indifference to Plaintiffs' constitutionally protected rights.

112.    As a direct and proximate result of the above cited violations of David's civil rights by Defendants, and as a direct and proximate result of these policies, practices, and customs, the Estate of David Stojcevski has sustained and is entitled to compensation for the following damages, including, but not limited to:

a.    Reasonable medical, hospital, funeral, and burial expenses;

b.    Economic costs and/or damages (past, present and future);

c.    Loss of love

d.    Extreme conscious pain and suffering undergone by David while he was incarcerated;

e.    Loss of financial support;

f.    Loss of service;

g.    Loss of gifts or other valuable gratitudes;

h.    Loss of sibling companionship and guidance;

i.    Loss of expected inheritance;

j.    Loss of society and companionship; and

LAW OFFICES
IHRIE O'BRIEN
24055 JEFFERSON AVE., SUITE 2000   ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778

k.  Any and all other damages identified through the course of discovery otherwise available under the Michigan Wrongful Death Act, *MCLA §* 600.2922.

WHEREFORE, Vladimir Stojcevski, as Personal Representative of the Estate of David Stojcevski, Deceased, respectfully requests that this Honorable Court enter judgment in Plaintiff Estate's favor and against Defendants, for the following relief:

A.  Compensatory non-economic and economic damages in excess of $75,000.00, including but not limited to all damages recoverable under the United States Constitution and/or 42 U.S.C. § 1983 and/or the laws of the State of Michigan including but not limited to the Michigan Wrongful Death Act;

B.  Punitive damages;

C.  Reasonable attorney fees, costs and interest; and

D.  Such other and further relief as appears reasonable and just under the circumstances.

## COUNT V:
## ESTATE OF DAVID STOJCEVSKI, DECEASED AND VLADIMIR STOJCEVSKI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

113.  Plaintiffs restate and re-allege the allegations contained in paragraphs 1 through 112 as though fully set forth herein.

114.  Defendants refusal to give David and Vladimir his requested medication, nursing assistance, medical treatment, mental health treatment, and sanitary care was intentional and unethical.

115.  Defendants refusal to provide Vladimir a sanitary environment, as detailed above, by refusing his numerous pleas to clean himself during his incarceration, causing Vladimir all the emotional, psychological and physical damages and injuries cited in this Complaint.

LAW OFFICES
IHRIE O'BRIEN
24055 JEFFERSON AVE., SUITE 2000   ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778

116.    While David was in his holding cell suffering the obvious symptoms of benzodiazapene withdrawal, dehydration, and starvation, Defendants continued to neglect David's medical, psychological, emotional and mental health needs that would be obvious to any reasonable person monitoring David for 24 hours a day, or for any reasonable person making casual observations of David.

117.    Any reasonable person would see that David needed immediate nursing, medical and/or mental health attention, and that Vladimir needed immediate medical and sanitary care.

118.    Defendants' actions and inactions noted herein resulted in severe and emotional distress to David and Vladimir while they were in their cells without an ability to assist themselves, and with insufficient assistance from any of Defendants' employees.

119.    On June 27, 2014 David was pronounced dead, without having been allowed to have his family or friends see him one last time.

120.    On June 23, 2014 Vladimir was taken to McLaren Hospital on an emergency basis for appropriate medical care that was in fact necessary many days prior to that date.

121.    Defendants', their agents, employees and representatives actions and inactions as outlined above was intentional, extreme, outrageous and of such character as not to be tolerated by a civilized society, and was for an ulterior motive or purpose.

122.    Defendants' conduct resulted in severe and serious emotional distress to: (a) David Stojcevski during his incarceration at Macomb County Jail, (b) Vladimir Stojcevski, personally, and as David's brother and as a bystander to the suffering inflicted on David by Defendants through their conduct identified above; and (c) all other wrongful death beneficiaries identified under the Michigan Wrongful Death Act.

LAW OFFICES
IHRIE O'BRIEN
24055 JEFFERSON AVE., SUITE 2000   ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778

123.    As a direct and proximate result of Defendants' conduct, Vladimir Stojcevski, on behalf of his family and and as Personal Representative of the Estate of David Stojcevski has and will continue to suffer injuries into the future, including but not limited to, severe mental disturbances and emotional upset for the refusal of their ability to pay their last respects to David before he died, as well as:

    a.    Upset stomach;

    b.    Headaches;

    c.    Insomnia;

    d.    Nightmares;

    e.    Crying spells;

    f.    Physical pain and suffering;

    g.    Illness and stress resulting in physical injury;

    h.    Mental anguish;

    i.    Fright and shock;

    j.    Embarrassment, humiliation and mortification;

    k.    Reasonable expenses from necessary medical care and treatment and services; and

    l.    All other damages learned through the course of discovery.

124.    All of the above damages have resulted in actual harm to Vladimir Stojcevski, the Estate of David Stojcevski, and the wrongful death beneficiaries identified in the Michigan Wrongful Death Act.

WHEREFORE, Vladimir Stojcevski, individually, and as Personal Representative of the Estate of David Stojcevski, Deceased, respectfully requests that this Honorable Court enter

LAW OFFICES
IHRIE O'BRIEN
24055 JEFFERSON AVE., SUITE 2000   ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778

judgment in Plaintiffs' favor and against Defendants, in whatever amount in excess of $75,000.00 they are found to be justly entitled, together with interest, costs and attorney fees.

Respectfully submitted,

IHRIE O'BRIEN

Dated: March 18, 2015                    By:

Harold A. Perakis (P35921)
Robert D. Ihrie (P26451)
Attorneys for the Plaintiffs
24055 Jefferson Avenue, Suite 2000
St. Clair Shores, Michigan 48080
(586) 778-7778

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully request a trial by jury in the instant matter.

Respectfully submitted,

IHRIE O'BRIEN

Dated: March 18, 2015                    By:

Harold A. Perakis (P35921)
Robert D. Ihrie (P26451)
Attorneys for the Plaintiffs
24055 Jefferson Avenue, Suite 2000
St. Clair Shores, Michigan 48080
(586) 778-7778

LAW OFFICES
IHRIE O'BRIEN
24055 JEFFERSON AVE., SUITE 2000   ST. CLAIR SHORES, MI 48080
TELEPHONE (586) 778-7778