UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VLADIMIR STOJCEVSKI, Individually
and as Personal Representative of the Estate
of DAVID STOJCEVSKI,

                Plaintiff,                    Civil Case No. 15-11019
                                                  Honorable Linda V. Parker

v.

COUNTY OF MACOMB, ET AL.

                Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS (ECF NOS. 15 & 17)

This lawsuit arises from the incarceration of two brothers in the Macomb

County Jail in June 2014, and the claim that they were denied necessary medical

care during their incarceration which tragically led to the death of David Stojcevski

("David") from acute drug withdrawal and the hospitalization of Vladimir

Stojcevski ("Vladimir") due to symptoms allegedly resulting from Defendants'

failure to provide him with his seizure medication.  Vladimir, individually and as

personal representative of David's estate (hereafter "Plaintiff"), names forty-seven

Defendants in his Amended Complaint filed June 1, 2015, as well as unnamed

John and/or Jane Doe Defendants.  The defendants fall into two groups, which the

Court will refer to as the "Macomb County Defendants" and the "Correct Care

Solutions Defendants" (hereafter "CCS Defendants").  The Macomb County

Defendants are: the County of Macomb; Sheriff Anthony M. Wickersham;

Michelle M. Sanborn; Barb Caskey; Lisa Bingham; Deputy Licavoli; Deputy M.

Murphy; Deputy Johnson; Deputy Keith Pethke; Deputy Paul Harrison; Deputy

John Talos; Deputy William Misany; Deputy Steven Marschke; Deputy Matthew

Salas; Deputy Kelly Kullman; Deputy William Horan; Deputy J. Dehate; Deputy

Campau; Deputy Kruger; Deputy Piszczek; Sergeant Patrick Johnson; and Deputy

John/Jane Does.  The CCS Defendants are: Correct Care Solutions, LLC ("CCS");

Monica Cueny; Tiffany Deluca; Kelly Mann; Chantalle Brock; Deeann Pavey;

Danyelle Nelson; Mical Bey-Shelley, Vicky Bertram, Heather Erhlich, Monica

Van Damme,[1] Jaclyn Cubanski,[2] Amanda Bishop, LPN; Cynthia Deview, RN;

Sarah Breen; Kelly Marie Hedtke, Psychologist; Temitope Oladokun Olagbaiye,

RN/Nurse Practitioner; Priscilla Pickett LPN; Suzanne Rychwalski LPN; Dixie

Debene; Dinal Good; Germain Ferrer, LPN; Thressa Williams; Linda Parton;

Amber Barber; Dr. Lawrence Sherman; and John/Jane Doe providers.

Presently before the Court are motions to dismiss filed by the Macomb

County Defendants and the CCS Defendants (collectively "Defendants").  The

---

[1] The CCS Defendants indicate that Monica Van Damme is now known as Monica Franks.  (ECF No. 15 at Pg ID 375 n.2.)
[2] The Amended Complaint identifies this defendant as "Jaclyn Cubanski." The CCS Defendants indicate that the correct spelling of this individual's last name is "Lubanski."

motions have been fully briefed and the Court held a motion hearing on October

14, 2015.  For the reasons that follow, the Court is granting in part and denying in

part Defendants' motions.

## I.    Factual and Procedural Background as to David

According to Plaintiff's Amended Complaint, David was brought to the

Macomb County Jail from Michigan's 39th District Court on June 11, 2014, to

serve a thirty (30) day jail sentence or pay $772.00 for failing to appear on the civil

infraction charge of careless driving.  (ECF No. 9 ¶ 22.)  The following

information was gleaned by "various jail personnel, as well as CCS employees or

agents" at David's intake: (a) he weighed 195 pounds; (b) his blood pressure was

120/84, his pulse rate was 97, and his respiratory rate was 12; (c) he had been

prescribed Methadone prior to incarceration; (d) he had potential for withdrawal,

thereby resulting in a Clinical Opiate Withdrawal Scale (COWS) being initiated;

(e) his mental status was noted as "Alert orientation, Affect appropriate, Logical

thought processes, Speech Appropriate, Mood Appropriate, Activity Appropriate."

(*Id*. ¶ 28.)  According to Plaintiff, COWS assessments were to be completed three

times daily.  (*Id*. ¶ 32.)

The Amended Complaint details David's physical and mental condition over

the next fifteen days and the actions of some defendants in relation to David.  The

Court will avoid restating those lengthy allegations here and assumes the reader's familiarity with the Amended Complaint.

On June 27, at approximately 5:20 p.m., unidentified Defendants found David struggling to breathe and rushed him by ambulance to the hospital. (*Id*. at 71.) David's weight was measured at 145 pounds by the emergency medical technicians-- a fifty pound loss from sixteen days earlier at intake into the jail. (*Id*.) Efforts to resuscitate David were unsuccessful, and he was pronounced dead at the hospital at 6:55 p.m. (*Id*. ¶ 72.) His death certificate records the cause of his death to be " 'Acute Withdrawal from Chronic Benzodiazepine, Methadone, and Opiate Medications' " with the approximate interval between onset of the cause of death and the death to be " '[w]eeks.' " (*Id*. ¶ 73.) The autopsy report reflects a final diagnosis and cause of David's death as: " 'Acute Withdrawal from Chronic Benzodiazepine, Methadone and Opiate Medications, Dehydration with hypernatremia, and Seizure/seizure like activity.' " (*Id*. ¶ 74.)

Plaintiff alleges that Defendants' "self-ordered 24 hour video monitoring of David from June 17, 2014 through June 27, 2014" reflects that David's mental and medical health deteriorated dramatically during those ten days. (*Id*. ¶ 59.) This included his loss of significant body weight. (*Id*.) According to Plaintiff, the video shows David's "excruciating pain and misery" during this period and "visibly

4

apparent symptoms of benzodiazapene withdrawal, that ultimately took his life."

(*Id.* ¶¶ 61, 64.)

In the Amended Complaint, Plaintiff asserts the following causes of action

based on the above-described conduct:

(I) against all Defendants, deliberate indifference to David's serious medical needs in "violation of 42 U.S.C. § 1983 and the 8th and 14th Amendments to the United States Constitution";

(II) "denial of medical treatment for serious medical needs" in violation of § 1983 and the Eighth and Fourteenth Amendments by the following defendants: (a) Macomb County Sheriff Anthony M. Wickersham; (b) the County; (c) Jail Administrator and County employee Michelle M. Sanborn; (d) Director of Macomb County Community Corrections and County employee Barb Caskey; (e) Supervisor of Community Service-March within Macomb County Community Corrections Lisa Bingham; and (f) "the individually named Defendants who had personal contact with Plaintiff, or who had video observance of David during his incarceration;

(III) "gross negligence, intentional, willful and wanton conduct" against all Defendants;  and,

(IV) "failure to train, inadequate policies and/or procedures, customs and practices, customs and practices and failure to supervise-deliberate indifference" by the County, Wickersham, CCS, Sanborn, Caskey, and Bingham.[3]

## II.    Factual and Procedural Background as to Vladimir

---

[3] The heading of Count IV lists only Macomb County and Wickersham; however, the allegations that follow clearly reflect that the claim also is against CCS, Sanborn, and Caskey.  (ECF No. 9 ¶¶ 112-122.)

On June 11, 2014, Vladimir also was brought to the Macomb County Jail from Michigan's 39th District Court, although he had been sentenced to serve thirty (30) days in jail or pay $655.00 for failing to appear on a Driving a Vehicle While License Suspended charge.  (ECF No. 1 ¶ 18.)  Plaintiff's Amended Complaint details Vladimir's condition upon arrival at the jail and during subsequent days and the conduct of some defendants in relation to Vladimir. Again, the Court assumes the reader's familiarity with the allegations in the Amended Complaint.

According to the Amended Complaint, Wickersham and CCS finally decided to release Vladimir from the jail to a hospital on June 23, 2014, heeding his "numerous and long-standing requests for medical care."  (*Id.* ¶ 137.)  It is alleged that upon admission to the hospital, Vladimir was suffering from:

(a) Systemic inflammatory response syndrome criteria with possible sepsis;

(b) Acute peritoneal cellulitis;

(c) Muscular edema secondary to infection versus inflammation of the bilateral gluteus maximus muscle group;

(d) Acute encephalopathy, non-specific etiology;

(e) Possible rectal mucosal tear secondary to anal trauma;

(f) Leukocytosis (increased white blood cell count);

(g) Acute intractable rectal and abdominal pain;

6

(h) Sacral wound; and

(i) Mild hypokalemia (low potassium).

(*Id*.)

The following claims are asserted in the Amended Complaint as a result of

Defendants' alleged conduct with respect to Vladimir:

> (1) against all defendants, deliberate indifference to his medical needs in "[v]iolation of 42 U.S.C. § 1983 and the 8th and 14th Amendments to the United States Constitution" (Count V);

> (2) against CCS, Wickersham, and the County, "denial of medical treatment for serious medical needs" in violation of the Eighth and Fourteenth Amendments (Count VI);

> (3) against all defendants, "gross negligence, intentional, willful and wanton conduct (Count VII);

> (4) against CCS, the County, and Wickersham, "failure to train, inadequate policies and/or procedures, customs and practices and failure to supervise- deliberate indifference" (Count VIII)[4];and

> (5) against all Defendants, intentional infliction of emotional distress (Count IX).

## III.   Defendants' Arguments

In their motions to dismiss, Defendants first argue that Plaintiff has

improperly joined under Federal Rule of Civil Procedure 20 the claims related to

David's treatment while incarcerated in the County jail and those related to

---

[4] While the heading of this count refers to the County and Wickersham, only, CCS is referred to as well in the paragraphs therein.  (ECF No. 9 ¶¶ 175-187.)

Vladimir's treatment.  Defendants argue that the claims do not arise out of the same transaction, occurrence, or series of transactions or occurrences as David and Vladimir were "housed separately and had separate encounters with medical personnel, jail staff, and separate outcomes to their stays."  (ECF No. 15 at Pg ID 379; ECF No. 17 Pg ID 444.)  Defendants therefore ask the Court to sever the two brothers' claims.

Next, Defendants argue that the claims related to Vladimir and David are subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court will not describe those arguments with more specificity at this time.  This is because, if the Court concludes that the two brothers' claims are improperly joined, it will not reach Defendants' arguments with respect to those claims that it decides to dismiss or sever.  The Court, therefore, will address Defendants' misjoinder argument first.

## IV.   Misjoinder

Rule 20 allows plaintiffs to join in one action only if:

(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; *and*

(B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1) (emphasis added).  Both requirements must be satisfied and if the plaintiffs fail to meet both, the court has the discretion to "sever the

8

misjoined plaintiffs, as long as no substantial right will be prejudiced by the severance." *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997) (citing Fed. R. Civ. P. 21; *Sabolsky v. Budzanoski*¸457 F.2d 1245, 1249 (3d Cir. 1972)).  When misjoinder occurs, Rule 21 grants a court the authority to drop or add parties "at any stage of the action and on such terms as are just."  Fed. R. Civ. P. 21.  Rule 21 also grants the court the discretion to "sever any claim against a party."  *Id*.

The Supreme Court has encouraged the joinder of claims and remedies.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).  The *Gibbs* Court stated: "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *Id*.  Consistent with this policy, the requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy. *Swan v. Ray*, 293 F.3d 1252, 1253 (11th Cir. 2002).  Nevertheless, a plaintiff or plaintiffs are not granted free license to join multiple defendants into a single lawsuit where the claims against the defendants are unrelated. *See, e.g., Pruden v. SCI Camp Hill*, 252 F. App'x 436, 437 (3d Cir. 2007) (per curiam); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Coughlin*, 130 F.3d at 1350.  Nor can multiple plaintiffs pass the two-part test of Rule 20(a)(1) where each plaintiff provides a different factual background, giving rise to

9

their "mutual" cause of action. *Coughlin*, 130 F.3d at 1350; *Abdelkarim v. Gonzales*, No. 06-14436, 2007 WL 1284924, *4-5 (E.D. Mich. Apr. 30, 2007).

The question of "[w]hether 'a particular factual situation constitutes a single transaction or occurrence' is a case-specific inquiry." *State Farm Fire & Cas. Co. v. Allied & Assoc.*, 860 F. Supp. 2d 432, 444-45 (E.D. Mich. 2012) (quoting *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)) (additional citation omitted). Some courts have adopted the "logical-relationship" test used in the context of Federal Rule of Civil Procedure 13 to determine whether the plaintiffs' claims arise out of "the same series of transactions or occurrences" for purposes of satisfying Rule 20's requirements. *See, e.g., Allied Assoc.*, 860 F. Supp. 2d at 445 (citing *Mosley*, 497 F.2d at 1333) (citing *Moore v. New York Cotton Exch.*, 270 U.S. 593, 610 (1926)); *In re EMC Corp.*, 677 F.3d 1351, 1357-58 (Fed. Cir. 2012). Under this test, " 'Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding.' " *Allied Assoc.*, 860 F. Supp. 2d at 445 (citing *Mosley*, 497 F.3d at 1333); *In re EMC Corp.*, 677 F.3d at 1358. To satisfy the logical-relationship test, there must be "substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant." *In re EMC Corp.*, 677 F.3d at 1358. Stated differently, the plaintiffs' claims "must *share* an aggregate of operative facts." *Id.* (emphasis

10

in original) (citing *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 882 (5th Cir. 1998) and *Iglesias v. Mut. Life Ins. Co.*, 156 F.3d 237, 242 (1st Cir. 1998)).

The claims related to Vladimir and David do not "share an aggregate of operative facts."  While it is true that they were incarcerated at the same jail during the same time period, they were housed in separate units, experienced different medical problems, and received different medical treatment by varying medical providers.  For the most part, their claims require entirely different proof. Undoubtedly, the Amended Complaint alleges that Vladimir's and David's injuries resulted from a jail, County, and/or CCS policy and/or practice of indifference to the medical needs of inmates.  Nevertheless, such similarity does not convert the claims involving Vladimir and David into the same "series of transactions or occurrences" in Rule 20(a)'s terms.  *See, e.g., Abdelkarim v. Gonzalez*, No. 06-14436, 2007 WL 1284924, at *4-5 (E.D. Mich. 2007) (citing *Coughlin*, 130 F.3d at 1350); *see also Lover v. District of Columbia*, 248 F.R.D. 319, 324 (D.D.C. 2008) (holding that the first prong of Rule 20 is not satisfied even though the proposed plaintiffs' claims levied against the District of Columbia, its police chief, and individual officers alleged similar illegal searches); *Morgan v. Cohen*, No. 11-11780, 2011 WL 2461470, at *3 (E.D. Mich. June 16, 2011) (dismissing all but one prisoner's claims alleging deliberate indifference to medical needs by the defendants– some of whom were employed at the same prison facility– reasoning

11

that the prisoners medical and retaliation claims "are personal to them and involve distinct factual scenarios even though the applicable legal standards may be the same."); *Harris v. Spellman*, 150 F.R.D. 130, 132 (N.D. Ill. 1993) (allegedly similar procedural errors do not convert independent prison disciplinary hearings into same transactions or occurrences when hearings involved different incidents of purported misconduct).  The claims related to David and Vladimir-- including whether any proven policy or practice led to their injuries– are dependent on facts unique to each individual.  If Rule 20(a)'s requirement were satisfied by the allegation of a similar policy or procedure, every inmate in a particular prison facility claiming deliberate indifference to his or her medical needs could join in a single action against the prison's corrections staff and/or medical providers.  The Court therefore concludes that Vladimir's and David's claims are misjoined.

As referenced earlier, in the event of misjoinder, Rule 21 provides a court with two remedial options: (1) drop misjoined parties "on such terms as are just"; or (2) sever any claims against misjoined parties so they can proceed separately. Fed. R. Civ. P. 21.  The Court finds that the more efficient option in this case is to dismiss without prejudice Vladimir's individual claims arising from his treatment by Defendants.  This will enable Vladimir to file a separate claim that identifies the particular defendants that he believes are liable for *his* individual injuries– which is not clear from the pending Amended Complaint.  Vladimir will not suffer harm as

12

a result.  Having reached this conclusion, the Court will not address at this time

Defendants' Rule 12(b)(6) motions to dismiss the claims related to Vladimir.

## V.  Standard Applicable to Evaluating the Claims Related to David under Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of

the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134

(6th Cir. 1996).  Under Federal Rule of Civil Procedure 8(a)(2), a pleading must

contain a "short and plain statement of the claim showing that the pleader is

entitled to relief."  To survive a motion to dismiss, a complaint need not contain

"detailed factual allegations," but it must contain more than "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action . . ."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint does not

"suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.' "

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*,

550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556). The

plausibility standard "does not impose a probability requirement at the pleading

13

stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

## VI.   Rule 12(b)(6) Analysis

### A.   Federal Claims

Plaintiff asserts § 1983 claims for the violations of David's rights under the Eighth and Fourteenth Amendments. "Section 1983 establishes 'a cause of action for deprivation under color of state law, of any rights, privileges or immunities secured by the Constitution or laws of the United States.' " *Jones v. Muskegon Cnty.*, 625 F.3d 935, 940-41 (6th Cir. 2010) (quoting *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 656 (6th Cir. 1994)). A plaintiff asserting a § 1983 claim must show: "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)). The Macomb County Defendants are undoubtedly state actors. The CCS Defendants, who were

14

providing services to Macomb County Jail inmates under contract, are deemed to be acting under color of state law *for purposes of § 1983*, as well. *West v. Atkins*, 487 U.S. 42 (1988).

With respect to his § 1983 claim alleging a violation of the Eighth Amendment, Plaintiff alleges that Defendants were deliberately indifferent to David's serious medical needs. Although not clearly stated in the Amended Complaint, but asserted by Plaintiff in response to Defendants' pending motions, Plaintiff's assertion of a Fourteenth Amendment violation is premised on David's alleged over-detention in the Macomb County Jail. Plaintiff in fact does allege in the Amended Complaint that the state district court issued a June 19, 2014 Amended Disposition Order "whereby David was to be released upon his enrollment in the Community Corrections March Program." (ECF No. 9 ¶ 66.) Plaintiff further alleges that the County, Wickersham, Caskey, and Bingham "fail[ed] to meet their obligation to fully implement [this] court order" and thereby caused David's over-detention in jail. (*Id.* ¶ 67.)

### 1. Deliberate Indifference in General

"The Eighth Amendment 'forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward his serious medical needs.' " *Jones*, 625 F.3d at 941 (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*,

15

429 U.S. 97, 104 (1976))).  In *Jones*, the Sixth Circuit described the elements of an

Eighth Amendment "deliberate indifference" claim as follows:

> A Section 1983 claim asserting "a constitutional violation for denial
> of medical care has objective and subjective components." *Id*. The
> objective component requires the existence of a "sufficiently serious"
> medical need. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970,
> 128 L.Ed.2d 811 (1994) (citation omitted). Such a medical need has
> been defined as one "that has been diagnosed by a physician as
> mandating treatment or one that is so obvious that even a lay person
> would easily recognize the necessity for a doctor's attention."
> *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citations omitted).
> The subjective element requires "an inmate to show that prison
> officials have 'a sufficiently culpable state of mind in denying medical
> care.' " *Blackmore*, 390 F.3d at 895 (quoting *Brown v. Bargery*, 207
> F.3d 863, 867 (6th Cir. 2000) ). Officials have a sufficiently culpable
> state of mind where officials act with "deliberate indifference" to a
> serious medical need. *Farmer*, 511 U.S. at 834, 114 S. Ct. 1970
> (citations omitted). The Supreme Court has defined "deliberate
> indifference" as being more than mere negligence but less than acting
> with purpose or knowledge. *Id*. at 835, 114 S. Ct. 1970. Instead, the
> prison official must have acted with a state of mind similar to
> recklessness. *Id*. at 836, 114 S. Ct. 1970. Thus, to prove the required
> level of culpability, a plaintiff must show that the official: (1)
> subjectively knew of a risk to the inmate's health, (2) drew the
> inference that a substantial risk of harm to the inmate existed, and (3)
> consciously disregarded that risk. *Id*. at 837, 114 S. Ct. 1970; *see also*
> *Cooper v. County of Washtenaw*, 222 Fed. Appx. 459, 466 (6th Cir.
> 2007); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994).

*Jones*, 625 F.3d at 941 (brackets omitted).  In the Amended Complaint, Plaintiff

asserts that Defendants were aware of the medications David was prescribed before

his incarceration in the Macomb County Jail, observed the effects of David's

withdrawal from those medications (e.g. significant weight loss, vomiting,

16

hallucinations, and muscular pain) and knew of the serious risk to his health as a result of not receiving those medications, and David died as a result.

### 2.    Personal Involvement

To establish personal liability under § 1983, the plaintiff must show that each defendant charged "caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Stated differently, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. In their motions to dismiss, Defendants argue that Plaintiff fails to assert any allegations with respect to certain defendants and that the conduct alleged by other defendants is insufficient to demonstrate deliberate indifference to David's serious medical needs.

As the Macomb County Defendants correctly point out, the Amended Complaint is devoid of specific factual claims as to Murphy, V. Johnson, Pethke, Talos, Misany, Marschke, Salas, Kullman, Horan, Dehate, Piszczek, Sergeant Johnson, or Kruger. (*See* ECF No. 9.) These defendants are mentioned only generically in paragraph 10, where they are identified as deputies and employees of the County. (*Id.* ¶ 10.) The CCS Defendants argue, correctly, that the Amended Complaint only generically refers to Mann, Pavey, Nelson, Van Damme, Cubanski (i.e. Lubanski), Hedtke, Olagbaiye, Pickett, Rychwalski, Debene, Good, and Ferrer as CCS agents or employees providing health care at the Macomb County Jail. (*Id.*

17

¶ 12.)  The CCS Defendants do not include Bishop or Deview in this list, although the same failings apply to them.  (*See id*.)  As Plaintiff fails to plead the actions by these defendants that allegedly caused the deprivation of David's constitutional rights, the Court holds that they must be dismissed.

Defendants argue that while the Amended Complaint sets forth specific factual allegations as to other defendants, those allegations are insufficient to give notice of liability for deliberate indifference.  The Court agrees with Defendants to some extent.  The only factual allegations in the Amended Complaint concerning Licavoli, Harrison, and Campau reflect their aid in providing care to David.  (*Id.* ¶ 43 (after David was found "lying on bed twitching his eyes" and seen by medical staff, Licavoli assisted David to wheelchair where he was taken to the Detox Unit for medical examination); ¶ 44 (Campau filed a referral to mental health noting that David was hallucinating, after which David was placed in MH01); ¶ 48 (Harrison observed David "twitching on the floor . . . and in response" David was seen by medical staff).)[5]  The allegations in the Amended Complaint also appear to fall short of stating a deliberate indifference claim against some of CCS' medical providers, although the pleading at least contains specific facts describing those providers' direct involvement with David.  For that reason, and because the Court

---

[5] Although not expressly stated, the suggestion in paragraph 48 is that Harrison summoned a medical provider after observing David "twitching on the floor."

lacks the knowledge to know at what point David's medical needs were sufficiently serious, when the medical providers should have become aware of those needs, and whether the care they provided might constitute deliberate indifference, it will allow Plaintiff's claims against the remaining Defendants to proceed.

For the reasons discussed above, however, the Court is granting Defendants' motions to dismiss as to the following individuals: Murphy, V. Johnson, Pethke, Talos, Misany, Marschke, Salas, Kullman, Horan, Dehate, Piszczek, Sergeant Johnson, Kruger, Mann, Pavey, Nelson, Van Damme, Cubanski, Hedtke, Olagbaiye, Pickett, Rychwalski, Debene, Good, Ferrer, Bishop, Deview, Licavoli, Harrison, and Campau.[6]

### 3.    Qualified Immunity

The Macomb County Defendants argue that they are entitled to qualified immunity.  Qualified immunity protects state actors sued under § 1983 from damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

---

[6] The Amended Complaint reflects that David had a serious medical need to which someone was indifferent and that over the course of several days, he exhibited signs of distress.  The Court wants to be clear that if, through discovery, Plaintiff uncovers evidence suggesting that any dismissed individual was aware of David's condition during this period and was deliberately indifferent to his serious medical needs, Plaintiff may move to re-name that individual as a party to this lawsuit at that time.

19

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks omitted).  The

determination of whether a government official is entitled to qualified immunity is

a two-step inquiry: "First, viewing the facts in the light most favorable to the

plaintiff, has the plaintiff shown that a constitutional violation has occurred?

Second, was the right clearly established at the time of the violation?"  *Miller v.*

*Sanilac Cnty*, 606 F.3d 240, 247 (6th Cir. 2010) (internal quotation marks and

citations omitted).  The Macomb County Defendants' argument in support of their

qualified immunity defense is as follows:

> The Deputies referred issues involving each Plaintiff to the medical
> and mental health staff . . . they recognized [Plaintiffs'] Eighth
> Amendment right to health care and referred all complaints to medical
> on multiple occasions.  This is all that they could do.  County staff are
> not medically trained, and by summoning medical staff, they did not
> violate, but rather upheld the right to medical treatment under the
> Constitution.

(ECF No. 17 at Pg ID 470-71.)

The Macomb County Defendants cite no authority supporting their apparent

contention that they are entitled to immunity simply because they delegated

David's medical care to CCS and CCS' employees.  This Court believes that

regardless of the County's reliance on an outside contractor to provide health care

to its jail inmates, if the Macomb County Defendants were aware of a risk to

David's health, drew the inference that a substantial risk of harm to David existed,

and consciously disregarded that risk, they too would be liable for David's injuries

20

under § 1983. *See Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010) (setting forth elements of an Eighth Amendment deliberate indifference claim). Notably, the Macomb County Defendants' argument is premised on their assertion that they referred *all* of David's complaints to the medical staff and that this was "all they could do" for David. These assertions appear to be contrary to the allegations in the Amended Complaint, however. At the very least, the factual record has not been sufficiently developed for the Court to conclude that these factual assertions are correct.

In short, the Court finds no merit to the Macomb County Defendants' qualified immunity argument.

### 4.    Supervisory Liability

The Macomb County Defendants argue that Plaintiff's claims against Wickersham, Sanborn, Caskey, and Bingham must be dismissed because they were not directly involved in the decisions regarding David's custody, housing, or care but are sued purely on a respondeat superior theory.

The Sixth Circuit "has held that § 1983 liability must be based on more than respondeat superior, or the right to control employees." *Shehee v. Luttrell*, 199 F.3d 295, 300 (1999). Supervisory liability attaches only where

> the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized,

21

approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Id.* (quoting *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982)). Where a supervisor also is a policymaker, care must be taken to distinguish an individual-capacity claim against the supervisor and an official-capacity or municipal claim, as they turn on two different legal principles. *See Essex v. Cnty. of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013).

In *Essex*, the court explained the distinction between these two legal principles:

> For individual liability on a failure-to-train or supervise theory, the defendant supervisor must be found to have " 'encouraged *the specific* incident of misconduct or in some other way directly participated in it.' " *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). A plaintiff must demonstrate that the defendant supervisor " 'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.' " *Id.* (quoting *Shehee*, 199 F.3d at 300). A mere failure to act will not suffice to establish supervisory liability. *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006).

*Essex*, 518 F. App'x at 355 (emphasis added). In contrast, an official capacity or municipal claim

> is a broader claim concerning the custom or policy of a municipality, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978), and thus would implicate the conduct of a defendant supervisor insofar as he acted with deliberate indifference in his official capacity as a policymaker. *See Phillips*, 534 F.3d at 543; *Campbell v. City of Springboro*, 700 F.3d 779, 794 (6th Cir. 2012). Such claims do not require direct participation in or encouragement of

22

the specific acts; rather, these claims may be premised on a failure to act. *See Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012). A plaintiff must establish that the municipality, through its policymakers, failed to train or supervise employees despite: 1) having actual or constructive knowledge of a pattern of similar constitutional violations by untrained employees, *see Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407-08, 117 S. Ct. 1382, 137 L.Ed.2d 626 (1997); or 2) the fact that the constitutional violation alleged was a patently obvious and "highly predictable consequence" of inadequate training, *id*. at 409, 117 S. Ct. 1382 (discussing *City of Canton v. Harris*, 489 U.S. 378, 390 n. 10, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989)).

*Essex*, 518 F. App'x at 355-56.  In the Amended Complaint, Plaintiff asserts both theories to hold Wickersham, Sanborn, Caskey, and Bingham liable for David's injuries.

In Count II of the Amended Complaint, Plaintiff appears to be asserting an individual liability claim against these defendants.  Plaintiff clearly is stating an official capacity or municipal claim in Count IV of the Amended Complaint.  The Amended Complaint, however, does not allege direct involvement, encouragement, implicit authorization, approval, or knowing acquiescence by Wickersham, Sanborn, Caskey, or Bingham in the specific misconduct related to David's healthcare.  Instead, the Amended Complaint premises the liability of these defendants on their alleged knowledge of general conditions in the jail that posed a risk to all inmates like David.  Specifically, Plaintiff alleges that CCS, Macomb County, Wickersham, Sanborn, Caskey, and Bingham had prior knowledge that:

23

(a) there were over-crowding conditions in the Macomb County Jail requiring policy and practice changes that would reduce such over-crowding;

(b) the Macomb County Jail had become the new asylum for mental health and substance abuse patients; and

(c) that many of [sic] Macomb County judges use the Macomb County Jail as a sobering institution for the inmates, such as [David and Vladimir].

(ECF No. 9 at ¶ 5.)  Put simply, the allegations against these defendants fall more in line with a *Monell* claim.  As such, the Court concludes that Count II fails to state a claim upon which relief can be granted against Wickersham, Sanborn, Caskey, or Bingham.  Plaintiff refers to CCS also in Count II.  Any claim against this entity must arise under *Monell*, however.  *See Topham v. Michigan Dept. of Corrections*, 09-10577, 2009 WL 3589527, at *3 (E.D. Mich. Oct. 26, 2009) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996); *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).

The Court therefore is dismissing Count II of the Amended Complaint.

### 5.   *Monell* **Claim**

As indicated in the preceding section, in Count IV of the Amended Complaint, Plaintiff seeks to hold the County, CCS, Wickersham, Sanborn, Caskey, and Bingham liable under an official capacity or municipal claim.

A plaintiff asserting a § 1983 claim under *Monell* "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom."

24

*Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. at 694); *see also Miller v. Sanilac Cnty.*, 606 F.3d 240, 254-55 (6th Cir. 2010) (the plaintiff must show that his constitutional rights were violated and that a policy or custom of the county was the "moving force" behind the deprivation of his rights). The plaintiff can make this showing by demonstrating one of the following:

> (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Burgess*, 735 F.3d at 478 (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). As indicated in the preceding section, "[a] municipality 'may not be sued under § 1983 for an injury inflicted solely by its employees or agents.' " *Id.* (quoting *Monell*, 436 U.S. at 694). The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Street*, 102 F.3d at 817-18 (recognizing that *Monell*'s holding has been extended to private corporations); *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (same).

Plaintiff sets forth at least fifteen "policies" or "procedures" in support of his *Monell* claim. (*See* ECF No. 9 ¶ 114.) Many of those policies and procedures, such as the failure to adhere to the standards of the "National Commission on Correctional Health", do not state a constitutional violation. The examples of

25

where such standards are not followed, however, constitute factual allegations that support Plaintiff's assertion that Macomb County Jail inmates are "not afforded proper medical treatment, mental health treatment, and/or nursing care, specifically as to mental health referrals, observations and adequate care for inmates withdrawing from various medications and drugs . . .." (*Id.* at 116.) Plaintiff also alleges that CCS, the County, Wickersham, Sanborn, Caskey, and Bingham "were aware of previous incidents" where these inmates were not afforded proper medical care. (*Id.*)

The Macomb County Defendants and CCS Defendants contend that Plaintiff's allegations assert only generic statements with respect to a policy or practice which are insufficient to satisfy the pleading standards set forth in *Twombly* and *Iqbal* and fail to demonstrate a link between any policy or practice and David's injuries. The Court disagrees for the reasons it discussed at length in *Estate of Romain v. City of Grosse Pointe Farms*, No. 14-12289, 2015 WL 1276278, at *16-17 (E.D. Mich. Mar. 18, 2015) (citing *Petty v. Cnty. of Franklin*, 478 F.3d 341, 347-48 (6th Cir. 2007)); *see also Stack v. Karnes*, 750 F.Supp.2d 892, 899 (S.D. Ohio 2010); *Medley v. City of Detroit*, No. 07–15046, 2008 WL 4279360, at *7–8 (E.D. Mich. Sept. 6, 2008) (relying on *Petty* and indicating that "[a]ny suspicion about the type of policy or custom, if any, which resulted in the

26

actions at issue here may be examined during discovery. Its existence may be challenged during summary judgment.").

The Court therefore is denying Defendant's motion to dismiss Count IV of the Amended Complaint.

### 6.    Due Process Claim

When referring to the deliberate indifference of Defendants with respect to David's medical needs, Plaintiff cites in the Amended Complaint to both the Eighth and Fourteenth Amendments. Because Plaintiff's deliberate indifference claim is covered specifically by the Eighth Amendment, it must be analyzed under the standard appropriate to that specific provision, rather than "the rubric of substantive due process." *Burgess*, 735 F.3d at 473 (citing *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). Defendants argue that Plaintiff therefore has inappropriately asserted a Fourteenth Amendment due process claim and that the claim must be dismissed. Plaintiff clarifies in response, however, that the violation of David's due process rights that is being asserted arises from his over-detention in the Macomb County Jail. (*See* ECF No. 32 at Pg ID 693.)

In reply, the Macomb County Defendants argue that Plaintiff fails to satisfy the pleading requirements of Federal Rule of Civil Procedure 8 to state a viable over-detention claim, as well as any binding legal authority in support of such a

27

claim.  The CCS Defendants argue that they did not have any input whatsoever in how long David was detained and, therefore, Plaintiff fails to state a viable Fourteenth Amendment claim against them.[7]  For the reasons that follow, the Court finds merit to some of Defendants' arguments.

The Sixth Circuit has recognized a due process claim arising from an inmate's incarceration beyond his or her court ordered release date.  *Shorts v. Bartholomew*, 255 F. App'x 46 (6th Cir. 2007).  As the court explained:

> . . . when a prisoner's sentence has expired, he is entitled to release. *Whirl v. Kern*, 407 F.2d 781, 791 (5th Cir. 1969) (holding that "there is no privilege in a jailer to keep a prisoner in jail beyond the period of his lawful sentence").  Perhaps more to the point, an incarcerated inmate has "a liberty interest in being released at the end of his term of imprisonment." *Schultz v. Egan*, 103 F. App'x 437, 440 (2d Cir. 2004); *Davis v. Hall*, 375 F.3d 703, 712-13 (8th Cir. 2004).  This liberty interest is most often attributed to the Due Process Clause of the Fourteenth Amendment.

*Id*. at 51 (brackets and additional citations omitted); *see also McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 246 (1972) (holding that continued incarceration after the lawful basis for custody expires violates due process under the Fourteenth Amendment). The District Court for the District of Columbia similarly has held that "[o]verdetentions potentially violate the substantive component of the Due

---

[7] In their reply brief, the CCS Defendants state that they had no input into how long "Mr. Vladimir" was detained.  (ECF No. 34 at Pg ID 788.)  The Court assumes they meant David as Plaintiff's over-detention claim relates only to David.  (ECF No. 9 ¶ 66.)

Process Clause by infringing upon an individual's basic liberty interest in being free from incarceration absent a criminal conviction." *Barnes v. District of Columbia*, 793 F. Supp. 2d 260, 274-75 (D.D.C. 2011). "Even if an inmate's initial confinement was justified by a constitutionally adequate basis, that confinement cannot constitutionally continue once that basis no longer exists." *Id*. at 725. The court recognized, however, that "temporarily retaining custody over an inmate who is entitled to release in order to accomplish administrative tasks incident to that release is not per se unconstitutional." *Id*. Nevertheless, failing to release inmates whose sentences have expired "within a reasonable time after the reasons for their detentions have ended" violates their due process rights. *Id*. (citing *Brass v. Cnty. of Los Angeles*, 328 F.3d 1192, 1200 (9th Cir. 2003); *Goldberg v. Hennepin Cnty.*, 417 F.3d 808, 811 (8th Cir. 2005)).

In *Shorts*, to evaluate the plaintiff's over-detention claim, the Sixth Circuit adopted the three-part "deliberate indifference" test set out by the Third Circuit in *Sample v. Diecks*, 885 F.2d 1099, 1110 (1989). *Shorts*, 255 F. App'x 55. Pursuant to this test, the plaintiff must show that: (1) the defendant had knowledge of the plaintiff's "problem" (i.e., detention beyond the plaintiff's sentence); (2) the defendant "either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight[]"; and (3) there is "a causal connection

between the [defendant's] response to the problem and the infliction of the unjustified detention." *Id*.

In the Amended Complaint, Plaintiff does not allege that any Defendant was aware of the state district court's June 19, 2014 Amended Disposition Order other than Macomb County, Wickersham, Caskey, and Bingham. (ECF No. 9 ¶¶ 66, 67.) But even as to these defendants, it is significant to note that, according to Plaintiff, the order only required David "to be released *upon his enrollment in* the Community Corrections March Program . . .." (*Id*. ¶ 66, emphasis added.) There is no indication in the Amended Complaint as to whether David became enrolled in that program so that his release was required, and if so, when. Moreover, Plaintiff does not allege that the above-named defendants were aware of such enrollment or any facts to suggest that even if he was enrolled and that they were aware of his entitlement to release, that they were deliberately indifferent to a problem with the effectuation of that order. For these reasons, the Court concludes that Plaintiff fails to adequately plead a Fourteenth Amendment due process claim in the Amended Complaint.

As such, the Court is granting Defendants' motion to dismiss Plaintiff's § 1983 claim to the extent it alleges violations of David's Fourteenth Amendment rights.

**B.    State Law Claim**

30

In the Amended Complaint, Plaintiff asserts only one state law claim arising from David's incarceration at the Macomb County Jail: Count III's claim for "gross negligence, intentional, willful and wanton conduct[.]"[8] (ECF No. 9 ¶¶ 106-111.) The Macomb County Defendants and CCS Defendants both argue that gross negligence is not a viable claim under Michigan law, but instead is an exception to Michigan's Government Tort Liability Act. *See* Mich. Comp. Laws § 691.1407. The Macomb County Defendants argue that the actions alleged in the Amended Complaint do not rise to the level of gross negligence. Citing *Hamer County of Kent*, No. 1:13-cv-504, 2013 U.S. Dist. LEXIS 186512 (W.D. Mich. Nov. 6, 2013), the CCS Defendants argue that, because they are not governmental employees, the statute's gross negligence exception does not apply to them and Plaintiff's claim is simply one for medical malpractice to which the procedural requirements for filing suit in Michigan Compiled Laws § 600.2912b apply (and have not been satisfied).

The Sixth Circuit's recent decision in *Kindl v. City of Berkley*, – F.3d –, 2015 WL 4899417 (Aug. 18, 2015), upholding the district court's decision denying summary judgment to the defendants on the plaintiff's gross negligence claim, leads this Court to reject the Macomb County Defendants' argument that the

---

[8] Defendants move for dismissal of an intentional infliction of emotional distress claim in their motions; however, that claim is asserted only in relation to Vladimir. (ECF No. 9 ¶¶ 189-99.)

31

conduct alleged in the Amended Complaint is insufficient to state a gross

negligence claim against them.  *Kindl* arose from the death of a detainee in the

custody of the City of Berkeley from delirium tremens (a severe form of alcohol

withdrawal) within less than a day of being taken into custody.  *Id*. at *1.  Similar

to the allegations in the present case, the evidence in *Kindl* reflected that the

detainee exhibited serious conditions as a result of the withdrawal and sought the

help from her jailers.  *Id*. at 2-4.

As the Sixth Circuit explained, "[f]or purposes of the immunity statute, gross

negligence occurs when a defendant's conduct is 'so reckless as to demonstrate a

substantial lack of concern for whether an injury results.' "  *Id*. at 10 (quoting

Mich. Comp. Laws § 691.1407(8)(a)).  The *Kindl* court concluded that a jury could

find that "[the d]efendants displayed 'a substantial lack of concern for whether an

injury results' when they failed to seek or provide any medical assistance for Kindl

despite having been alerted to her condition . . . and despite her visible symptoms

including multiple seizures, urinary incontinence, and falling off the bench."  *Id*.

Because the Amended Complaint contains similar allegations concerning David's

symptoms-- albeit David's symptoms allegedly lasted for a longer period of time–

*Kindl* suggests that Plaintiff has stated a viable gross negligence claim against the

Macomb County Defendants.

32

With respect to the CCS Defendants, the relevant question is not whether the Michigan Government Tort Liability Act applies to them.  Rather, the determinative questions are: (1) whether Plaintiff's "gross negligence" claim is merely one of gross negligence, not subject to Michigan's requirements for malpractice claims, or whether it is actually a malpractice claim, to which those requirements apply; and (2) even if classified as a malpractice claim, whether Michigan's requirements for the filing of such claims apply in this federal court action.  Addressing the first question in a factually similar case, *Jones v. Correctional Medical Services, Inc.*, 845 F. Supp. 2d 824, 844-46 (W.D. Mich. 2012), the Honorable Paul Maloney characterized the plaintiff's gross negligence claim as a medical malpractice claim.[9]  This Court is persuaded by Judge Maloney's reasoning in *Jones* and concludes that Plaintiff's "gross negligence" claim against the CCS Defendants is in fact a medical malpractice claim.  In *Jones*, Judge Maloney also addressed the second question– whether Michigan's requirements for filing a medical malpractice claim apply in federal court.  He held that they do.  With respect to this answer, however, the Court parts ways with Judge Maloney.

---

[9] *Jones* arose from the death of a Michigan Department of Corrections' inmate from viral meningoencephalitis.  *Id*. at 831.  The personal representative of the inmate's estate sued various defendants, including health care providers working for an independent contractor hired by the Michigan Department of Corrections to provide medical care to inmates.  *Id*. at 831, 846.

33

The Court believes that the Honorable David Lawson reached the correct answer to this question in *Long v. Adams*, 411 F. Supp. 2d 701, 705 (E.D. Mich. 2006). As Judge Lawson explains in *Long*, whether Michigan's requirements for medical malpractice claims apply to a federal court action depends on whether the requirements are substantive or procedural rules. *Id*. at 705 (explaining that "Sixth Circuit precedent firmly establishes that '[i]n federal diversity actions, state law governs substantive issues and federal law governs procedural issues.' ") (quoting *Legg v. Chopra*, 286 F.3d 286, 289 (6th Cir. 2002)) (additional citations omitted). Michigan's requirements for malpractice claims are procedural requirements that did not apply to the federal action before him. *Id*. at 707. The Court therefore concludes that Plaintiff's failure to comply with Michigan's requirements is not a basis for dismissing Count III of the Amended Complaint against the CCS Defendants.

At this stage, therefore, the Court is denying Defendants' motions to dismiss Count III of the Amended Complaint.

## V.     Conclusion

In summary, the Court is **GRANTING IN PART AND DENYING IN PART** the motions to dismiss filed by the CCS Defendants (ECF No. 15) and the Macomb County Defendants (ECF No. 17). As an initial matter, the Court concludes that Plaintiff has improperly joined the claims related to David with

34

those related to Vladimir and grants Defendants' request to sever those claims. Therefore, the Court is **DISMISSING WITHOUT PREJUDICE Counts V-IX** of the Amended Complaint and is **DISMISSING** Vladimir Stojcevksi, **individually only** as a party (i.e., he remains a party as Personal Representative of the Estate of David Stojcevksi).

With respect to the claims related to David, the Court concludes that Plaintiff fails to set forth personal involvement of the following defendants in the misconduct alleged and thus the Court is **DISMISSING THE FOLLOWING DEFENDANTS** from this action: Deputy M. Murphy, Deputy Johnson, Deputy Keith Pethke, Deputy John Talos, Deputy William Misany, Deputy Steven Marschke, Deputy Matthew Salas, Deputy Kelly Kullman, Deputy William Horan, Deputy J. Dehate, Deputy Piszczek, Sergeant Patrick Johnson, Deputy Kruger, Kelly Mann, Deeann Pavey, Danyelle Nelson, Monica Van Damme, Jaclyn Cubanski, Kelly Marie Hedtke, Temitope Oladokun Olagbaiye, Priscilla Pickett, Suzanne Rychwalski, Dixie, Debene, Dinal Good, Germain Ferrer, Amanda Bishop, and Cynthia Deview.

While Plaintiff alleges facts setting forth the personal involvement of the following defendants, the Court finds those facts insufficient to state a claim on which relief may be granted.  The Court therefore is also **DISMISSING THESE DEFENDANTS** from this action: Deputy Licavoli, Deputy Paul Harrison, and

Deputy Campau.  As noted by the Court, however, if through discovery Plaintiff

uncovers additional facts that would support his claims against these defendants,

he may move to re-name them in this action.

Finally, the Court is **DISMISSING WITH PREJUDICE Count II** of the

Amended Complaint.

**SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: November 9, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of
record and/or pro se parties on this date, November 9, 2015, by electronic and/or
U.S. First Class mail.

s/ Richard Loury
Case Manager

36