## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

DAFINKA STOJCEVSKI, as Personal
Representative of the Estate of DAVID
STOJCEVSKI, Deceased,

      Plaintiff,

v.

COUNTY OF MACOMB, et al.,

      Defendants.

Case No. 15-cv-11019
Hon. Linda V. Parker
Mag. Judge David R. Grand

---

| | |
|---|---|
| IHRIE O'BRIEN<br>Robert D. Ihrie (P26451)<br>Harold A. Perakis (P35921)<br>Attorneys for Plaintiff<br>24055 Jefferson Avenue, Suite 2000<br>St. Clair Shores, MI 48080<br>(586) 778-7778<br>ihrieobrien@aol.com<br>hperakis@ihrieobrienlaw.com | CHAPMAN LAW GROUP<br>Ronald W. Chapman Sr., M.P.A.,<br>LL.M. (P37603)<br>Madeline Young (P82140)<br>Attorneys for Correct Care Solutions<br>Defendants<br>1441 West Long Lake Rd., Suite 310<br>Troy, MI 48098<br>(248) 644-6326<br>rchapman@chapmanlawgroup.com<br>myoung@chapmanlawgroup.com |
| MACOMB COUNTY CORPORATION<br>COUNSEL<br>John A. Schapka (P36731)<br>Robert S. Gazall (P41350)<br>Attorneys for Macomb County<br>Defendants<br>One S. Main Street, 8th Floor<br>Mount Clemens, MI 48043<br>(586) 469-6346<br>john.schapka@macombgov.org<br>robert.gazall@macombgov.org | WILSON ELSER MOSKOWITZ EDELMAN<br>& DICKER, LLP<br>John T. Eads, III (P43815)<br>Cara M. Swindlehurst (P79953)<br>Co-Counsel for Macomb County<br>Defendants<br>17197 N. Laurel Park Dr., Suite 201<br>Livonia, MI 48152<br>(313) 327-3100<br>John.Eads@wilsonelser.com<br>Cara.Swindlehurst@wilsonelser.com |

## DEFENDANTS CORRECT CARE SOLUTIONS, L.L.C.; MONICA CUENY; CHANTALLE BROCK; MICAL BEY-SHELLY; VICKY BERTRAM; AND LAWRENCE SHERMAN, M.D.'S MOTION IN LIMINE TO PRECLUDE PLAINTIFF FROM ELICITING EXPERT TESTIMONY FROM PLAINTIFF'S EXPERT ROBERT GREIFINGER, M.D.

NOW COME Defendants CORRECT CARE SOLUTIONS, L.L.C.; MONICA CUENY; CHANTALLE BROCK; MICAL BEY-SHELLY; VICKY BERTRAM; LAWRENCE SHERMAN, M.D.; (the "CCS Defendants"), by and through their counsel, CHAPMAN LAW GROUP, moves to preclude Plaintiff from eliciting expert witness testimony from Robert Greifinger, M.D. pursuant to *Daubert v. Dow*, 509 U.S. 579 (1993), and Fed. R. Evid. 702, as follows:

1. Plaintiff retained expert Robert Greifinger, M.D., pursuant to Fed. R. Civ. P. 26(a)(2)(B), who will present evidence or offer testimony at trial under Fed. R. Evid. 702, 703, or 705.

2. Fed. R. Evid. 702 states expert testimony is only admissible if it satisfies three (3) broad requirements: (1) the witness offering the testimony must have knowledge, skill, experience, training, or education that <u>qualifies</u> the witness as an expert; (2) the witness's opinions must be <u>reliable</u>; and (3) the witness's opinions must <u>assist the trier of fact</u>. (emphasis added)

3. District courts are the "gatekeep[ers]" of expert testimony. *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Fed. R. of Evid. 702 tasks them with determining whether an expert's "scientific,

technical, or other specialized knowledge" will assist the trier of fact in doing its job, and whether the expert's testimony "is the product of reliable principles and methods." Fed. R. Evid. 702(a), (c).

4. Dr. Greifinger is Plaintiff's expert retained to provide opinion testimony concerning correctional healthcare policy and quality management, as well as medical care provided to Plaintiff's decedent.

5. While CCS Defendants do not dispute Dr. Greifinger may possess the requisite qualifications and experience to opine on healthcare policy and quality management, any opinions regarding the medical care must be precluded on the basis that:

    a.   He is not qualified to render expert opinions on matters outside correctional healthcare policy and quality management.

    b.   His opinions are unreliable because he failed to articulate a reliable basis for his opinions, or specify the method used in arriving at his conclusions as required under *Daubert*.

    c.   His opinions are not relevant and would not assist the trier of fact.

6. Defense counsel contacted Plaintiff's counsel on January 13, 2021 via telephone and email to attain concurrence. Concurrence could not be obtained.

WHEREFORE, Defendants CORRECT CARE SOLUTIONS, L.L.C.; MONICA CUENY; CHANTALLE BROCK; MICAL BEY-SHELLY; VICKY BERTRAM; LAWRENCE SHERMAN, M.D.; by and through their counsel, CHAPMAN LAW GROUP, respectfully request that this Honorable Court enter an order to preclude Plaintiff from eliciting expert testimony from Plaintiff's expert Robert Greifinger, M.D., pursuant to *Daubert v. Dow*, 509 U.S. 579 (1993), and Fed. R. Evid. 702; and provide any and all such other relief as the Court deems just and equitable.

Respectfully submitted,

Dated: January 19, 2021

/s/ Madeline Young
Ronald W. Chapman Sr., M.P.A., LL.M. (P37603)
Madeline Young (P82140)
Attorneys for the CCS Defendants
1441 West Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
rchapman@chapmanlawgroup.com
myoung@chapmanlawgroup.com

4

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

DAFINKA STOJCEVSKI, as Personal
Representative of the Estate of DAVID
STOJCEVSKI, Deceased,

      Plaintiff,

v.

COUNTY OF MACOMB, et al.,

      Defendants.

Case No. 15-cv-11019
Hon. Linda V. Parker
Mag. Judge David R. Grand

---

IHRIE O'BRIEN
Robert D. Ihrie (P26451)
Harold A. Perakis (P35921)
Attorneys for Plaintiff
24055 Jefferson Avenue, Suite 2000
St. Clair Shores, MI 48080
(586) 778-7778
ihrieobrien@aol.com
hperakis@ihrieobrienlaw.com

MACOMB COUNTY CORPORATION
COUNSEL
John A. Schapka (P36731)
Robert S. Gazall (P41350)
Attorneys for Macomb County
Defendants
One S. Main Street, 8th Floor
Mount Clemens, MI 48043
(586) 469-6346
john.schapka@macombgov.org
robert.gazall@macombgov.org

CHAPMAN LAW GROUP
Ronald W. Chapman Sr., M.P.A.,
LL.M. (P37603)
Madeline Young (P82140)
Attorneys for Correct Care Solutions
Defendants
1441 West Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
rchapman@chapmanlawgroup.com
myoung@chapmanlawgroup.com

WILSON ELSER MOSKOWITZ EDELMAN
& DICKER, LLP
John T. Eads, III (P43815)
Cara M. Swindlehurst (P79953)
Co-Counsel for Macomb County
Defendants
17197 N. Laurel Park Dr., Suite 201
Livonia, MI 48152
(313) 327-3100
John.Eads@wilsonelser.com
Cara.Swindlehurst@wilsonelser.com

---

## BRIEF IN SUPPORT OF DEFENDANTS CORRECT CARE SOLUTIONS, L.L.C.; MONICA CUENY; CHANTALLE BROCK; MICAL BEY-SHELLY; VICKY BERTRAM; LAWRENCE SHERMAN, M.D.'S MOTION IN LIMINE TO PRECLUDE PLAINTIFF FROM ELICITING EXPERT TESTIMONY FROM PLAINTIFF'S EXPERT ROBERT GREIFINGER, M.D.

## PROOF OF SERVICE

# **TABLE OF CONTENTS**

INDEX OF AUTHORITIES ................................................................ iv

INDEX OF EXHIBITS .................................................................... vi

STATEMENTS OF ISSUES PRESENTED ..................................... vii

CONTROLLING/APPROPRIATE AUTHORITY FOR RELIEF SOUGHT ..... viii

CCS Defendants incorporate by reference their statement of facts in support of their Motion for Summary Judgment. (See Dkt. No. 148, PageID.3978-3989). ......1

I.   LEGAL STANDARD ................................................................1

II.  LEGAL ARGUMENT ..............................................................2

   A.  Dr. Greifinger is Not Qualified to Offer Expert Witness Testimony Concerning Matters Outside Correctional Healthcare Policies and Quality Management. ......................................................................4

   B.  Dr. Greifinger's Expert Opinions are Not Reliable nor Relevant Pursuant to *Daubert* and Should be Excluded. ....................................................10

   C.  Dr. Greifinger Cannot Render an Opinion on an Ultimate Issue of This Case, I.E., Whether the CCS Defendants are "Deliberately Indifferent." .....................17

III.  CONCLUSION .......................................................................18

## INDEX OF AUTHORITIES

**CASES**                                                                     **PAGE**

*Al-Turki v. Robinson*, No. 10-CV-02404-WJM-CBS, 2013 WL 603109, at *5 (D.
    Colo. Feb. 15, 2013) ...................................................................................17

*Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994) ...................................3

*Best v. Lowe's Home Ctrs.*, Inc., 563 F.3d 171, 177 (6th Cir. 2009).....................15

*Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 657 (6th Cir. 2005) ....16

*Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990)............................4

*Daubert* .................................................................................................................18

*Daubert v. Dow*, 509 U.S. 579 (1993) ...........................................................passim

*Dukes v. State*, 428 F. Supp. 2d 1298 (2006) ......................................... 11, 13, 16

*Goforth v. Paris*, et al., No. 02-CV-94, 2007 U.S. Dist. LEXIS 23366 *; 2007 WL
    988733 (M.D. Ga Mar. 30, 2007)....................................................................11

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529-530 (6th Cir. 2008) ........vii, 1

*Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723 (7th Cir. 1999)...............................4

*Kumho Tire, supra*, 526 U.S. at 149-150 ................................................................3

*Morgan-Mapp v. George W. Hill Corr. Facility*, No. CV 07-2949, 2008 WL
    11366456, at *1 (E.D. Pa. Oct. 3, 2008) ........................................................17

*Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012)...15

*R.C. Olmstead, Inc., v. CU Interface*, LLC, 606 F.3d 262, 271 (6th Cir. 2010).....15

*Salgado v. Gen. Motors Corp.*, 150 F.3d 73, 742 n. 6 (7th Cir. 1998)..................15

*Smelser v. Norfolk Southern Ry. Co.*, 105 F.3d 299, 303 (6th Cir. 1997) ...............3

*Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 670-672 (6th Cir. 2010).....................2

*Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005)........................2

*U.S. v. Bonds*, 12 F.3d 540, 556 (6th Cir. 1993)..................................................3, 4

*United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) ..........................16

iv

*United States v. Melcher*, 672 F. App'x 547, 552 (6th Cir. 2016) ........................17

*Woods v. Lecureax*, 110 F.3d 1215 (6th Cir.1997) ...............................................17

<u>R</u><u>ULES</u>                                                                 <u>P</u><u>AGE</u>

Fed. R. Civ. P. 26(a)(2)(B) ....................................................................................2

Fed. R. Evid. 104(a) ..............................................................................................3

Fed. R. Evid. 702 ...........................................................................................passim

## <u>INDEX OF EXHIBITS</u>

**EXHIBIT A**     CV of Robert B. Greifinger, M.D.

**EXHIBIT B**     Deposition Transcript of Robert B. Greifinger, M.D. dated
              April 4, 2018

**EXHIBIT C**     Expert Report of Robert B. Greifinger, M.D.

**EXHIBIT D**     *Dukes v. State*, 428 F. Supp. 1298 (N.D. Ga Mar. 30, 2006)

**EXHIBIT E**     *Goforth v. Paris*, 2007 U.S. Dist. LEXIS 23366*; 2007 WL
              988733 (M.D. Ga Mar. 30, 2007)

## **STATEMENTS OF ISSUES PRESENTED**

SHOULD THE COURT PRECLUDE PLAINTIFF'S EXPERT ROBERT GREIFINGER M.D. FROM OFFERING EXPERT OPINIONS CONCERNING ALLEGED CONSTITUTIONAL VIOLATIONS AND/OR CAUSATION PURSUANT TO *DAUBERT* AND FED. R. EVID. 702?

DEFENDANTS STATE:                              YES.
PLAINTIFF STATES:                              NO.

## <u>CONTROLLING/APPROPRIATE AUTHORITY FOR RELIEF SOUGHT</u>

Fed. R. Evid. 702 states expert testimony is only admissible if it satisfies three (3) broad requirements: (1) the witness offering the testimony must have knowledge, skill, experience, training, or education that <u>qualifies</u> the witness as an expert; (2) the witness's opinions must be <u>reliable</u>; and (3) the witness's opinions must assist the trier of fact.

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993) and Fed. R. Evid. 702 require that this Court, "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."

"The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529-530 (6th Cir. 2008), citing Fed. R. Evid. 702.

## RELEVANT FACTUAL HISTORY

CCS Defendants incorporate by reference their statement of facts in support of their Motion for Summary Judgment. (**See Dkt. No. 148, PageID.3978-3989**).

## I.  LEGAL STANDARD

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993) requires that this Court, "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."

Under the *Daubert* standard, the factors that may be considered in determining whether the methodology is valid are: (1) whether the theory or technique in question can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) its known or potential error rate; (4) the existence and maintenance of standards controlling its operation; and (5) whether it has attracted widespread acceptance within a relevant scientific community.

"The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529-530 (6th Cir. 2008), citing Fed. R. Evid. 702.

1

## II.  <u>LEGAL ARGUMENT</u>

This Court has the duty to be the gatekeeper as to scientific evidence, which requires this Court to assess whether the medical opinions are actually supported by <u>science</u> and not just accept the opinions because of the nature of the expert's qualifications: "**The trial court's gatekeeping function requires more than simply taking the expert's word for it. [A court being] presented with only the experts' qualifications, their conclusions and their assurances of reliability [is not enough under *Daubert*].**" *Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005). Further, Fed. R. Evid. 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Thus, an expert's opinion that is based upon speculation is not admissible, because "the courtroom is not the place for scientific guesswork, even of the inspired sort." *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 670-672 (6th Cir. 2010).

Under *Daubert*, the "gatekeeping" function, *supra*, 509 U.S. at 597, consists of three (3) steps. First, it must be determined whether the witness is qualified as an

2

expert. "When making a preliminary finding regarding an expert's qualifications under Fed. R. Evid. 104(a), the court is to examine 'not the qualifications of a witness in the abstract, but <u>whether those qualifications provide a foundation for a witness to answer a specific question</u>.'" *Smelser v. Norfolk Southern Ry. Co.*, 105 F.3d 299, 303 (6ᵗʰ Cir. 1997) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6ᵗʰ Cir. 1994)). Second, it must be determined whether the testimony is reliable. See *Daubert, supra,* 509 U.S. at 590. The Court in *Daubert* listed several factors for consideration in assessing the reliability of scientific testimony, including:

- Whether a "theory or technique . . . can be (and has been) tested";
- Whether it "has been subjected to peer review and publication";
- Whether, in respect to a particular technique, there is a high "known or potential rate of error" and whether there are "standards controlling the technique's operation"; and
- Whether the theory or technique enjoys "general acceptance" within a "relevant scientific community."

*Kumho Tire, supra*, 526 U.S. at 149-150 (quoting *Daubert, supra*, 509 U.S. at 592-594). The focus must be on the principles and methodologies on which the expert's opinion is based, and not on the merits of the expert's conclusions. *Daubert, supra*, 509 U.S. at 594-595 n. 12; *U.S. v. Bonds*, 12 F.3d 540, 556 (6ᵗʰ Cir. 1993) (district courts "are not to be concerned with the reliability of the conclusions generated by valid methods, principles and reasoning."). Finally, this Court must determine whether the expert's reasoning or methodology properly applies to the facts at issue:

3

i.e., whether the opinion is relevant. *See Daubert*, supra, 509 U.S. at 591-593. To be relevant, the testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. This relevance requirement ensures that there is a "fit" between the testimony and the issue to be resolved at trial. *Bonds*, supra, 12 F.3d at 555.

Here, Dr. Greifinger is not qualified to offer expert witness testimony concerning matters outside correctional healthcare policies and quality management and does not render any reliable opinions regarding standard of care or causation in his report, but at most, involve unreliable conclusory statements.

**A. Dr. Greifinger is Not Qualified to Offer Expert Witness Testimony Concerning Matters Outside Correctional Healthcare Policies and Quality Management.**

Fed. R. Evid. 702 requires that an expert have a requisite level of knowledge, skill, experience, training, and education in order to offer expert witness testimony. A witness's qualifications must correspond to the subject matter of his or her proffered testimony. *See Jones v. Lincoln Elec. Co*., 188 F.3d 709, 723 (7th Cir. 1999) (citing *Carroll v. Otis Elevator Co*., 896 F.2d 210, 212 (7th Cir. 1990)) ("Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony.").

4

Dr. Greifinger offers expert testimony against CCS Defendants, three (3) of whom are nurses (Monica Cueny, R.N.; Mical Bey-Shelly, R.N.; and Vicky Bertram, R.N.), a mental health professional (Chantalle Brock), and doctor (Lawrence Sherman, M.D.). However, Dr. Greifinger is not qualified to testify to matters outside correctional healthcare policy and quality management. Said another way, Dr. Greifinger is not qualified to testify to matters which involve actual medical treatment of patients as is at issue in this case. Dr. Greifinger has not provided medical care since <u>1985</u>. (**Exhibit B p. 6:10-13**). Dr. Greifinger's only relevant history related to actual medical treatment of patients is during his time as a pediatric physician, which occurred well over thirty (30) years ago. (***Id.***) He admits that he would need reeducation to practice medicine again. (**Exhibit B at p. 10**). His career is summarized as follows:

Dr. Greifinger completed medical school in 1971. (**Exhibit B at p. 8**). He then entered a residency and social medicine, providing medical care for children and adolescence from ranging from ages zero (0) to twenty-one (21). The only time he was trained on benzodiazepine withdrawals was when he was in pediatric residency (***Id.* at 11**); however, he only treated a small number of patients and cannot remember actually rendering treatment. (***Id.* at 21**). Dr. Greifinger remains board-certified in pediatrics simply because he is grandfathered in. (***Id.* at p. 10**). He never

5

applied or attended neurological residency, psychiatric residency, or internal medicine residency. (*Id.* at 13).

From 1977 through 1980, he held a Medical Director position at Community Health Plan of Suffolk. (*Id.*). He maintained an administrative position, requiring him to manage recruitment, retention of clinical staff, and general quality management. (*Id.* at 14). This position did not provide the ability to practice neurology or psychiatry. (*Id.*). He did still practice in pediatric care. (*Id.* at 15).

From 1980 to 1985, Dr. Greifinger was Chief Medical Officer at Westchester Community Health Plan White Plains, NY. (*Id.*). At least half of Dr. Greifinger's duties were administrative at this position. (*Id.*). The remaining time was spent solely in the field of pediatrics. (*Id.*). This was the last time Dr. Greifinger practiced medicine.

From 1985 to 1989, Dr. Greifinger was the Vice President of Montefiore Medical Center, and operationally in charge of a variety of non-inpatient programs, including the management of the contract that Montefiore had with the City of New York to provide medical care for the inmates on Rikers Island. (*Id.* at 17). This position was "100% administrative." (*Id.* at 17-18).

From 1989 to 1995, Dr. Greifinger was the Deputy Commissioner Chief Medical Officer of the New York State of Correctional Services. (*Id.* at 17). Again, his duties were solely administrative. (*Id.*).

6

From 1995 to the present time, Dr. Greifinger devotes his time to consulting design management operations, quality improvement, and utilization management for correctional healthcare systems. (***Id.* at 19**). He does not allocate any time in the active clinical assessment or treatment of adult patients (***Id.***), patients with neurological issues (***Id.***), patients with psychiatric issues (***Id.* at 20**), or to patients suffering from withdrawal. (***Id.***).

According to Prisoners' Legal Services of New York where Dr. Greifinger's services are highlighted[1], he is <u>a health care policy and quality management consultant</u>, and the description of his areas of focus are as follows:

> [H]is work focuses on <u>the design, management, and quality improvement in correctional health care systems</u>. He has extensive experience in the development and management of complex community and institutional health programs, and strengths in the bridging of clinical and public policy interests.

Dr. Greifinger's curriculum vitae substantiate his testimony that his specialization is confined to correctional health care policy and quality management. (**Exhibit A**). Dr. Greifinger's curriculum vitae mentions not one (1) publication related to pain management, neurological dysfunction, psychiatry, catatonic state, or drug withdrawal, and absolutely no mention of benzodiazepine withdrawal. (**Exhibit A, pp. 5-8**). Dr. Greifinger's area of expertise and superior education is of correctional

---

[1]   https://www.plsny.org/dr.-robert-b.-greifinger--m.d..html (Last accessed on October 24, 2019)

health policy and quality management, which he did opine stating that CCS clinical guidelines were more than adequate and were good. (**Exhibit B, p. 72:6-9**).

CCS Defendants acknowledge Dr. Greifinger possesses a medical degree. However, the mere fact that Dr. Greifinger has a medical degree and treated patients thirty (30) years ago does not presently qualify him to offer expert witness opinions in a situation where the *medical treatment* provided to Plaintiff's decedent is at issue. Dr. Greifinger is not qualified to testify against the CCS nurse defendants since he has never practiced as a nurse, has no nursing education, training, or experience, as a nurse. Dr. Greifinger's only connection to nursing is when he oversaw the administration of medical care in the New York prison system over twenty (20) years ago. (**Exhibit B, pp. 85:12-86:1**). Similarly, Dr. Greifinger is not a mental health professional, trained in psychiatry, or has ever treated patients as a mental health professional. Dr. Greifinger testified that he in fact would rely on opinions related to psychiatric conditions to people that are more learned in medicine to make those kinds of determinations. (**Exhibit B, pp. 36:21-37:2**). While general practitioners can sometimes be found qualified to testify as to conditions outside their specialty, Dr. Greifinger is not a practicing physician or a general practitioner. He is not a practicing physician and has no experience in internal medicine, pain and suffering, mental anguish, drug withdrawal, catatonic state, malignant catatonia, neurological

function, and starvation because he has no requisite superior experience or education in such areas.

When evaluating Dr. Greifinger's experience related to CCS Defendants' position that Mr. Stojcevski suffered from malignant catatonia, Dr. Greifinger has no educational or experiential background in catatonia. Dr. Greifinger testified he has never diagnosed or treated a patient who suffered from catatonia (**Exhibit B, pp. 12:25-13:5**), has never published anything related to catatonia (**Exhibit B, p. 35:21-23**), and has never been involved in any research projects relating to diagnosis or treatment of catatonia. (**Exhibit B, pp. 35:24-36:2**). Even when evaluating Plaintiff's position of benzodiazepine withdrawal, Dr. Greifinger has no educational or experiential background qualifications to opine on such condition. Dr. Greifinger testified that he cannot specifically recall treating <u>anybody</u> that was going thorough benzodiazepine withdrawal during his time as a pediatric resident (**Exhibit B, p. 11:16-20; p. 12:18-21**) and had no knowledge of benzodiazepine withdrawal stages (**Exhibit B, p. 107:6-108:1**). He has never prescribed Xanax or Klonopin to a patient, cannot identify the difference between Xanax and Klonopin, and does not know the different half-life between the two (2) drugs and its effects on withdrawals. (**Exhibit B at p. 106-107**).

Further, the Court must compare the area in which Dr. Greifinger has superior experience or education, with the subject matter of the witness' testimony. Dr.

Greifinger's opinions and conclusions, while mainly resorting to stating the actions of various Defendants and claiming they fell below the standard of correctional health care and demonstrate deliberate indifference, *see infra*, includes opinions that comment on pain and suffering; nutritional health; mental anguish; and neurological function. (**See Exhibit C, p. 9**). Dr. Greifinger is not an expert in internal medicine, neurology, mental health, pain management, or drug withdrawal/addiction. (**Exhibit D, pp. 7-8, Exhibit C**). Dr. Greifinger has not provided hands-on treatment to patients in over thirty (30) years and, even when he was providing treatment, it was to adolescent individuals. Dr. Greifinger testified that he has had no formal training in the areas of psychiatry, neurology, forensic pathology, nursing, since either his time in medical school or following his pediatric residence. (**Exhibit B, pp. 46-48**).

Dr. Greifinger is not qualified to offer expert opinions in areas that do not involve correctional healthcare policy and quality management.

## B. **Dr. Greifinger's Expert Opinions are Not Reliable nor Relevant Pursuant to *Daubert* and Should be Excluded.**

In *Daubert*, the Supreme Court of the United States directed district courts faced with the proffer of expert testimony to conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. at 592-93, 113 S. Ct. at 2796. Dr. Greifinger's opinions have previously been found to be unreliable by other federal courts due to his failure to

provide any support for his statements and providing no basis for his conclusions, contrary to the requirements under *Daubert* and Fed. R. Evid. 702. (*See* **Exhibits D and E**). In the matter of *Dukes v. State*, 428 F. Supp. 2d 1298 (2006), the United States District Court for the Northern District of Georgia found that Dr. Greifinger's expert report was not sufficiently reliable for various reasons, but namely that:

- Dr. Greifinger offered no argument as to why his statements are reliable.
- Dr. Greifinger offered no support for his findings, and what he based his conclusions on.
- Dr. Greifinger cited no support for his conclusions except his experience.
- Dr. Greifinger made no reference to any specific experience or material upon which he relief in making his conclusions.

428 F. Supp. 2d 1298 (2006). (**Exhibit D, p. 9**). Similarly, in the matter *Goforth v. Paris*, 2007 U.S. Dist. LEXIS 23366 *; 2007 WL 988733 (M.D. Ga Mar. 30, 2007), the United States Court for the Middle District of Georgia found that they were unable to find the opinions offered as sufficiently reliable because Dr. Greifinger failed to articulate a reliable basis for his opinions or specify the method used in arriving at his conclusions. (**Exhibit E**). Specifically, the Court stated that rather than applying the specific facts of this case, Dr. Greifinger seemed to assume that Plaintiff suffered harm because harm is hypothetically possible when treatment is delayed. (**Exhibit E, p. 6**).

11

Here, Dr. Greifinger's expert report similarly has not one articulated basis for his opinions and makes no mention of the methods he used in arriving at his conclusions. Fed. R. Evid. 702 explains that "[t]he expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded." Fed. R. Evid. 702, advisory committee's notes (2000 amendment). Yet, "[i]f the witness is relying solely or primarily on experience, then the witness must explain <u>how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts</u>." *Id.* (emphasis added). First, Dr. Greifinger offers no sufficient data or facts that would prove such opinions were the product of reliable principles and methods. Dr. Greifinger offers no studies, publications, peer-reviewed articles, in support of his opinions, and provided no such documents during his deposition, thus presumably he relies on his experience to offer such opinions. When questioned as to the basis of his opinions against CCS Defendant Chantelle Brock's alleged fabrication, Dr. Greifinger resorted to conclusory statements:

> Q:    Paragraph 65 of your report you accuse Kelly Mann and Chantelle Brock of fabricating, that he refused; paragraph, 65.
>
> A:    I have it.
>
> ***
>
> Q:    He did not talk to her on the 18th, 19th, or 20th, correct?

12

A:     That is correct because he was unresponsive, he was
       unable to.
Q:     That is your determination, I am asking.
A:     **That is my opinion.**
                              ***
A:     [y]ou have no sense of how these neurological
       conditions are. There are people who are
       unresponsive one minute and perhaps responsive
       another minute.
Q:     That is your opinion. You are not a psychiatrist, a
       neurologist, you have no training in regard to that
       so let's not go down that route.

(**Exhibit B, pp. 98-102**). When asked for his basis in opining that Dr. Sherman

ignored Mr. Stojcevski's altered consciousness, Dr. Greifinger stated:

Q:     My question to you is, not that these things happen.
       My question to you is on the 17th he did do an
       examination. What proof do you have that he
       ignored them, he came to a conclusion you might
       not agree with them. What proof do you have that
       he ignored them?
A:     **That is my opinion.**

(**Exhibit B, pp. 112-113**). Similarly, when asked for his proof or basis for stating

Dr. Sherman ignored Mr. Stojcevski's disturbed cognition and tremors, Dr.

Greifinger testified that, in his opinion, he did not think the exam was adequate

enough and that was the basis of his opinions that Mr. Stojcevski was being ignored.

(**Exhibit B, pp. 113-114**).

When an expert offers opinions based on experience, Fed. R. Evid. 702

requires Dr. Greifinger to explain <u>how</u> his experience led him to the conclusions

reached, why such experience is a sufficient basis for the opinion, and how that

13

experience is reliably applied to the facts. Dr. Greifinger has failed to tie any specific experience with any of the conclusions reached in this matter. Similar to the matter in *Dukes* Dr. Greifinger's opinions are simply a summary of CCS Defendants' actions with regard to Mr. Stojcesvski and concludes that such actions fall below the standards of correctional health care and demonstrate deliberate indifference to Plaintiff's serious medical needs.

Dr. Greifinger's opinions and conclusions include seventeen (17) numbered paragraphs that can be summarized into eleven (11) broad categories as follows:

1. Mr. Stojcevski's death was preventable. (¶57)
2. Mr. Stojcevski suffered pain and suffering as a result of a disregard for his withdrawal from benzodiazepine medication. (¶57, 60)
3. Monica Cueny R.N. was aware of the risks of withdrawal from benzodiazepines and ignored Mr. Stojcevski. (¶58)
4. CCS nurses failed to verify Mr. Stojcevski's opiate and benzodiazepine medication and take his vital signs. (¶59, 70)
5. CCS Defendants chose to ignore Mr. Stojcevski's pain and suffering and mental anguish. (¶58, 60, 61, 66, 73)
6. CCS Defendants failed to follow CCS policies, guidelines, and protocols. (¶58, 62, 63, 66)
7. Chantalle Brock fabricated that Mr. Stojcevski "refused" to cooperate and failed to refer him to a psychiatrist for a diagnosis. (¶ 65)
8. Dr. Sherman chose to ignore Mr. Stojcevski's altered consciousness, his disturbed cognition, and his tremors, his recent benzodiazepine medication, chose to avoid doing a mental status exam, and a physical exam. (¶66)
9. CCS Defendants perpetuated a myth that Mr. Stojcevski was feigning. (¶69)

14

      10. CCS failed to train and supervise its clinical staff on policies and guidelines for withdrawal, hunger strike, and mental health care. (¶72)

      11. Mr. Stojcevski suffered from dehydration that caused or contributed to his death. (¶61, 65, 66)

(**Exhibit C, pp. 9-11**). Dr. Greifinger's opinions are not supported by any data, facts, or based on a scientific basis for such opinions. Dr. Greifinger's opinions are conclusory and devoid of any specific experience to support such conclusions. Dr. Greifinger opines that Mr. Stojcevski's death was preventable yet fails to provide any evidence that CCS Defendants' actions or inactions proximately caused his death. Dr. Greifinger testified that he relied upon the opinions of pathology experts in this case, and that he has no training in pathology or determinations of cause of death related to dehydration. (**Exhibit B, p. 36:8-14; p. 43:6-9**). The Sixth Circuit has noted that an expert's "reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity" can render his opinion inadmissible. *Newell Rubbermaid, Inc. v. Raymond Corp*., 676 F.3d 521, 527 (6th Cir. 2012) (citing *Best v. Lowe's Home Ctrs*., Inc., 563 F.3d 171, 177 (6th Cir. 2009)). Here, Dr. Greifinger's opinion fails to consider the facts and rather resorts to interpretations of the facts in light of what he believes is an appropriate medical assessment, despite not treating a patient in over thirty (30) years. Expert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *R.C. Olmstead, Inc., v. CU Interface*,

LLC, 606 F.3d 262, 271 (6th Cir. 2010) (citing *Salgado v. Gen. Motors Corp.*, 150 F.3d 73, 742 n. 6 (7th Cir. 1998)). "[A]n expert opinion must 'set forth facts' and, in doing so, outline a line of reasoning arising from a logical foundation." *Id.* (citing *Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 657 (6th Cir. 2005)). Excluding an expert's *ipse dixit* opinion testimony maintains the integrity of *Daubert*'s requirements because "[i]f admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004). Dr. Greifinger's *ipse dixit* opinions must be excluded because he fails to outline a line of reasoning arising from a logical foundation.

Lastly, Dr. Greifinger's opinions are not relevant, in that they will not assist the trier of fact understand the evidence or to determine a fact at issue. Fed. R. Evid. 702. Dr. Greifinger's opinion fails to indicate what CCS Defendants should have done in relation to Mr. Stojcevski's medical care, and resorts to summaries of actions and conclusions that those actions fell below the standard of care. As was found in *Dukes*, Dr. Greifinger's opinions are no different from what Plaintiff's lawyers will argue during their closing, and his conclusions do nothing to advance a material aspect of Plaintiff's case. Thus, any opinions or conclusions Dr. Greifinger would make would not assist the jury and are therefore not relevant and should be excluded.

16

**C. Dr. Greifinger Cannot Render an Opinion on an Ultimate Issue of This Case, I.E., Whether the CCS Defendants are "Deliberately Indifferent."**

Not only is Dr. Greifinger not qualified to testify to matters outside correctional healthcare, but he is not permitted to make legal conclusions. Expert witnesses are not permitted to make legal conclusions. *United States v. Melcher*, 672 F. App'x 547, 552 (6th Cir. 2016). An expert makes a legal conclusion when "he defines the governing legal standard or <u>applies the standard to the facts of the case</u>." *Id*. (emphasis added) (citations omitted). Here, Dr. Greifinger's opinion is littered with references that various Defendants actions or inactions demonstrated <u>deliberate indifference</u> to Mr. Stojcevski's serious medical needs. (*See* **Exhibit C**).

The Sixth Circuit in *Woods v. Lecureax*, 110 F.3d 1215 (6th Cir.1997), affirmed the trial court's decision to prohibit an expert witness' use of the term "deliberate indifference." The court observed that "whether a prison official acted with deliberate indifference depends on that official's state of mind. Thus, by expressing the opinion that [the defendant] was deliberately indifferent, [the expert] gives the false impression that he knows the answer to this inquiry, which depends on [the defendant's] mental state." 110 F.3d at 1221. This would not be the first time that a court has prohibited Dr. Greifinger from using the phrase "deliberately indifferent," or expressing any opinion regarding a defendant's mental state. *Al-Turki v. Robinson*, No. 10-CV-02404-WJM-CBS, 2013 WL 603109, at *5 (D. Colo. Feb. 15, 2013); *Morgan-Mapp v. George W. Hill Corr. Facility*, No. CV 07-2949,

17

2008 WL 11366456, at *1 (E.D. Pa. Oct. 3, 2008). Dr. Greifinger's statements regarding deliberate indifference were not permitted and were stricken from the record.

### III. <u>CONCLUSION</u>

Dr. Greifinger is not qualified to offer expert opinions against CCS Defendants, and his opinions must be stricken for the following reasons:

- Dr. Greifinger is not qualified to testify as to matters outside correctional healthcare policy and quality management because he does not have the requisite education or experience to testify as to medical treatment of patients pursuant to *Daubert*.
- Dr. Greifinger cannot opine regarding legal conclusions and cannot state whether certain actions constitute deliberate indifference.
- Dr. Greifinger's opinions are unreliable because they are not based on scientific evidence or peer-reviewed evidence; therefore, his testimony must be stricken under Fed. R. Evid. 702 and *Daubert*.
- Dr. Greifinger's opinions are unreliable because he fails to opine <u>how</u> his experience supports the basis of his claims and conclusions.
- Dr. Greifinger's opinions are not relevant and would not assist the trier of fact pursuant to Fed. R. Evid. 702.

Respectfully submitted,
CHAPMAN LAW GROUP

Dated: January 19, 2021

/s/ Madeline Young
Ronald W. Chapman Sr., M.P.A.,
LL.M. (P37603)
Madeline Young (P82140)
Attorney for the CCS Defendants
1441 West Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
rchapman@chapmanlawgroup.com
myoung@chapmanlawgroup.com

## PROOF OF SERVICE

I hereby certify that on January 19, 2021 I presented the foregoing paper to the Clerk of the Court for filing and uploading to the ECF system, which will send notification of such filing to the attorneys of record listed herein and I hereby certify that I have mailed by US Postal Service the document to the involved nonparticipants.

/s/ Madeline Young
Madeline Young (P82140)
1441 West Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
myoung@chapmanlawgroup.com