UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAFINKA STOJCEVSKI,
as Personal Representative
of the Estate of DAVID STOJCEVSKI, Deceased,

     Plaintiff,

            Case No. 15-cv-11019
v.            Honorable Linda V. Parker

COUNTY OF MACOMB, et al.,

     Defendant.
_____/

## OPINION & ORDER ADDRESSING DEFENDANTS' MOTIONS IN LIMINE

This lawsuit arises from the death of David Stojcevski while serving a thirty-day sentence in the Macomb County Jail. On March 18, 2015, the personal representative of David's estate ("Plaintiff") filed a Complaint against Macomb County and numerous Macomb County employees who worked at the jail (collectively "Macomb County Defendants"), as well as several Correct Care Solutions ("CCS") employees who were assigned to provide health care to inmates at the jail (collectively "CCS Defendants"). After this Court's September 30, 2019 decision on several dispositive motions (ECF No. 186), what remains and is pending for trial are Plaintiff's 42 U.S.C. § 1983 claims asserting deliberate indifference in violation of David's rights under the Eighth and Fourteenth Amendments against Defendants Vicky Bertram, Monica Cueny, Mical Bey-Shelley, Lawrence Sherman,

Chatalle Brock, CCS, Brian Avery, Paul Harrison, Morgan Cooney, John Talos,

Brian Pingilley, Steven Vaneenoo, Walter Oxley, and Macomb County.

Now pending before the Court are numerous motions in limine filed by either

the Macomb County Defendants or the CCS Defendants.  The motions have been

fully briefed.

## MOTION IN LIMINE TO PRECLUDE PLAINTIFF FROM ELICITING EXPERT TESTIMONY FROM PLAINTIFF'S EXPERT ROBERT GREIFINGER M.D. (ECF NO. 209)

The CCS Defendants seek to preclude Plaintiff from offering the expert

testimony of Robert Greifinger, M.D.  The CCS Defendants concede that Dr.

Greifinger possesses the requisite qualifications and experience to opine on

healthcare policy and quality management.  (ECF No. 209 at Pg ID 7602.)

Nevertheless, they assert that his opinions on medical care must be precluded for

three primary reasons.

First, the CCS Defendants argue that Dr. Greifinger is not qualified to render

expert opinions beyond correctional healthcare policy and quality management.  The

CCS Defendants maintain that Dr. Greifinger is not qualified to testify to matters

involving actual medical treatment of patients because he has not provided medical

care since 1985 and, when he did, it was in the capacity as a pediatric physician.

According to the CCS Defendants, Dr. Greifinger's training and experience with

benzodiazepine withdrawal is limited.  Second, the CCS Defendants maintain that Dr.

2

Greifinger's opinions must be precluded because they are not supported by a reliable basis such as data, facts, or a scientific basis.  Lastly, the CCS Defendants argue that Dr. Greifinger's opinions are inadmissible because they will not assist the trier of fact.

## Analysis

Pursuant to the Federal Rules of Evidence, relevant evidence is admissible but may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.  Fed. R. Evid. 403.  Federal Rule of Evidence 702 specifically addresses the admissibility of expert witness testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The United States Supreme Court has instructed that Rule 702 requires district courts to ensure that expert testimony "rests on a reliable foundation and is relevant to the task at hand."  *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 597 (1993).  The rule imparts a "gatekeeping" responsibility on district courts to exclude unreliable and irrelevant expert testimony from trial.  *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 260 (6th Cir. 2001) (quoting *Daubert*, 509 U.S. at 597).

As Rule 702 provides, to be admissible, expert testimony must assist the trier of fact in understanding the evidence or determining a material fact in question.  Fed. R. Evid. 702(a); *see also Daubert*, 509 U.S. at 592-93.  Expert evidence is not helpful and is improperly admitted when it addresses matters within the understanding or common knowledge of the average juror or invades the province of the jury.  *See United States v. Thomas*, 74 F.3d 676, 684 n. 6 (6th Cir. 1996), abrogated on other grounds by *Morales v. Am. Honda Motor Co.*, 151 F.3d 500 (6th Cir. 1998).  As succinctly stated by the Sixth Circuit in *Berry v. City of Detroit*: "If everyone knows [a particular fact], then we do not need an expert because the testimony will not 'assist the trier of fact to understand the evidence or to determine a fact in issue.'"  25 F.3d 1342, 1350 (6th Cir. 1994) (quoting Fed. R. Evid. 702).  Expert testimony based on scientifically valid principles will satisfy Rule 702; whereas "an expert's subjective belief or unsupported speculation will not."  *Smelser v. Norfolk S. Ry. Co.*,

105 F.3d 299, 303 (6th Cir. 1997) (citation omitted), abrogated on other grounds by *Morales*, 151 F.3d 500).

Federal Rule of Evidence 704 abolishes the "ultimate issue" rule which precluded opinion testimony merely because it embraced an ultimate issue. Fed. R. Evid. 704 ("An opinion is not objectionable just because it embraces an ultimate issue."). However, the Advisory Committee Notes specifically warn that the rule "does not lower the bar so as to admit all opinions," because "[u]nder Rule 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time." *Id.* Advisory Committee Notes. The notes go on: "These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach . . .." *Id.* "The decision to admit or exclude such evidence ultimately turns on whether it is helpful to the trier of fact. *Hefflin v. Steward Cnty., Tenn.*, 958 F.2d 709, 715 (6th Cir. 1992) (citing *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985)).

Dr. Greifinger has extensive experience in correctional health care, including six years overseeing the administration of medical care for the entire New York prison system and two years managing medical care at the New York City jail on Rikers Island. (*See* ECF No. 232-2 at Pg ID 9661.) This experience has provided Dr. Greifinger with specialized knowledge and expertise in the clinical care of inmates' serious medical conditions, including nursing, mental health, and medical care. This

encompasses the care of inmates experiencing drug withdrawal, including

benzodiazepine withdrawal.  Dr. Greifinger's lack of recent experience treating

patients generally and lack of any experience treating patients experiencing

benzodiazepine withdrawal specifically are issues Defendants can raise on cross-

examination to challenge his credibility.  This lack of care goes to the weight, not the

admissibility, of Dr. Greifinger's expert testimony.

Contrary to the CCS Defendants' assertion, Dr. Greifinger's expert report

reflects that his opinions are based, in part, on his review of the facts and data in this

matter.  He reviewed Defendants' policies, the deposition testimony, and the video

footage capturing David's condition from when he entered a jail cell until his death.

Dr. Greifinger also reviewed records of David's food and water intake and notes from

correction officers and nurses during the ten days David was incarcerated.

Dr. Greifinger's expert opinion will aid the trier of fact to understand matters

not within the understanding or common knowledge of the average juror.  The Court

recognizes the error that might occur if Dr. Greifinger uses the term "deliberate

indifference" when stating his opinion.  *See Woods v. Lecureux*, 110 F.3d 1215,

1220-21 (6th Cir. 1997).  However, as Plaintiff offers and *Woods* reflects, Dr.

Greifinger may still testify as to his expert opinion if he avoids using the term.  *See*

*id*. (citing *Hefflin*, 958 F.2d at 715, where the Sixth Circuit found no reversible error

due to the expert's use of the term because the expert "used 'deliberately indifferent'

in the way an ordinary layman would to describe such conduct—to state his opinion on the ultimate fact, not to state a legal conclusion.")

For these reasons, the CCS Defendants' Motion in Limine to Preclude Plaintiff from Eliciting Expert Testimony from Plaintiff's Expert Robert Greifinger, M.D. (ECF No. 209) is **DENIED**. Dr. Greifinger may testify within the limits highlighted here.

### CCS DEFENDANTS' MOTION IN LIMINE TO LIMIT PLAINTIFF'S DAMAGES TO SURVIVAL DAMAGES UNDER 42 U.S.C. § 1983 (ECF NO. 210)

Plaintiff asserted four counts against Defendants in her initial Complaint, one of which was a gross negligence claim that the Court subsequently reclassified as a claim for medical malpractice. (ECF No. 42 at Pg ID 912.) The parties subsequently stipulated to the dismissal of that claim. (ECF No. 56.) Plaintiff, however, again included her gross negligence claim in a Second Amended Complaint filed on September 20, 2017. (ECF No. 104 at Pg ID 2321-26.) Because Plaintiff never sought leave to re-assert her state law claim in the amended pleading, the Court sua sponte dismissed the claim without prejudice in its September 30, 2019 decision. (ECF No. 186 at Pg ID 6944-56 n.1.) Thus, the only claims currently asserted in this lawsuit are under 42 U.S.C. § 1983. For that reason, the CCS Defendants now move to limit Plaintiff's damages to survival damages under § 1983. (ECF No. 210.) Without a pending state law claim, the CCS Defendants maintain that Plaintiff may

not seek damages under Michigan's wrongful death statute, Michigan Compiled

Laws § 600.2922.

## Analysis

Section 1983 provides no guidance for how to evaluate damages.  However, 42

U.S.C. § 1988 provides in relevant part that if § 1983 is

> deficient in the provisions necessary to furnish suitable remedies
> and punish offenses against law, the common law, as modified
> and changed by the constitution and statutes of the State wherein
> the court having jurisdiction of such civil or criminal cause is
> held, so far as the same is not inconsistent with the Constitution
> and laws of the United States, shall be extended to and govern the
> said courts in the trial and disposition of the cause

42 U.S.C. § 1988(a).  Michigan law undoubtedly controls here and thus Michigan's

civil damages laws apply to this action.  *See Frontier Ins. Co. v. Blaty*, 454 F.3d 590,

598 (6th Cir. 2006).

Under Michigan's wrongful death statute,

> the court or jury may award damages as the court or jury shall
> consider fair and equitable, under all the circumstances including
> reasonable medical, hospital, funeral, and burial expenses for
> which the estate is liable; reasonable compensation for the pain
> and suffering, while conscious, undergone by the deceased during
> the period intervening between the time of the injury and death;
> and damages for the loss of financial support and the loss of the
> society and companionship of the deceased.

Mich. Comp. Laws § 600.2922(6).  The Sixth Circuit Court of Appeals has held that

the statute does not provide a separate cause of action.  *See Blaty*, 454 F.3d at 598-

600; *Kane v. Rohrbacher*, 83 F.3d 804, 805 (6th Cir. 1996).  Instead, it provides

certain damages once a civil rights or tort violation is found which led to death. *Blaty*, 454 F.3d at 598-604.  *Blaty* recognized that a decedent's estate may recover the full extent of damages available under the statute in a § 1983 claim.  *Id.* at 603-04.  As such, Plaintiff's failure to plead a "wrongful death claim" does not preclude her from recovering damages under the statute.[1]

Citing *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000), and *Jaco v. Bloechle*, 739 F.2d 239, 242 (6th Cir. 1984), the CCS Defendants argue that a § 1983 action for deprivation of civil rights is an action personal to the injured party and therefore "no cause of action may lie under § 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family."  (ECF No. 210 at Pg ID 7747 (quoting *Claybrook*, 199 F.3d at 357).)  In another case where the defendant similarly "interpret[ed]] *Claybrook* and *Jaco* to mean that, because no independent cause of action may lie under § 1983 for collateral injuries suffered by survivors, then survivors have no right to recover damages[,]" the district court found that "th[e] analysis incorrectly confines *Claybrook*, misapplies *Jaco*, and does not consider later Sixth Circuit precedent in *Blaty*."  *Warren v. Shilling*, No. 2:12-cv-13, 2015 WL 1726787, at *3 (W.D. Mich. Apr. 15, 2015).  This Court agrees.

---

[1] Plaintiff does in fact request damages under Michigan's wrongful death statute in her pleadings, however.  (*See,* Am. Compl. ¶¶ 271, 272, 287, 293, ECF No. 104 at Pg ID 2310-12, 2319-20, 2324-25.)

Neither *Claybrook* nor *Jaco* involved Michigan's wrongful death statute. *Jaco* involved Ohio law which provided a cause of action only to the victim's heirs but no remedy for the personal injury suffered by the victim. *Jaco*, 739 F.2d at 242. As such, the Sixth Circuit held that the statute was insufficient for purposes of §§ 1983 and 1988. *See Blaty*, 454 F.3d at 602. According to the Sixth Circuit, Michigan's statute, which in comparison provides recovery for a victim and the victim's estates and survivors, is not inconsistent with the Constitution and goals of § 1983 and therefore should not be disturbed. *Id*. at 603.

*Claybrook* held only that § 1983 did not create an independent cause of action for survivors. 199 F.3d at 357. The Tennessee statute at play in *Claybrook* did not allow for the family of the victim to collect survivor's losses. The Sixth Circuit's decision did not foreclose damages in a personal capacity claim under a statute, such as Michigan's, which provides for survivor's losses. *See Blaty*, 454 F.3d at 601 (holding that Michigan's wrongful death statute, which "authorizes an award of damages for survivor's losses of support, society, and companionship," applies to § 1983 actions through § 1988).

For these reasons, the CCS Defendant's Motion in Limine to Limit Plaintiff's Damages to Survival Damages under 42 U.S.C. § 1983 (ECF No. 210) is **DENIED**.

## CCS DEFENDANTS' MOTION IN LIMINE TO PRECLUDE ANY AND ALL EVIDENCE SURROUNDING ANY PERSONNEL FILES (ECF NO. 211)

The CCS Defendants seek to preclude Plaintiff from offering any evidence from their personnel files, maintaining that such evidence is inadmissible under Federal Rule of Evidence 404(b) and more prejudicial than probative and therefore also inadmissible under Federal Rule of Evidence 403.  The CCS Defendants further maintain that evidence in their personnel files may be precluded under Federal Rule of Evidence 407 as evidence of subsequent remedial measures.  Finally, the CCS Defendants argue that the non-privileged privacy interest that is attached to the files precludes their disclosure.

### Analysis

The Court is unable to rule on the CCS Defendants' sweeping request without knowing what specific materials are contained in the personnel files and will be offered at trial and under what specific circumstances the evidence will be offered. Without this information, the Court cannot assess whether it is relevant, more prejudicial than probative, or otherwise admissible or inadmissible under the Federal Rules of Evidence.  Such evidence might be admissible for impeachment purposes. *See* Fed. R. Evid. 407.  Further, under Rule 404(b), evidence of a defendant's past misconduct and/or discipline may be admissible to show *inter alia* knowledge, absence of mistake, or lack of accident.  Finally, to the extent private and sensitive

11

materials are contained within the personnel files, redactions can be made to prevent their disclosure.

Whether Plaintiff may now seek those files through a trial subpoena—an issue that the CCS Defendants raised only in their reply brief—is not currently ripe for the Court's review.

Accordingly, the Court is **DENYING WITHOUT PREJUDICE** the CCS Defendants' Motion in Limine to Preclude Any and All Evidence Surrounding Any Personnel Files (ECF No. 211).

## <u>CCS DEFENDANTS' MOTION IN LIMINE TO PRECLUDE IMPROPER CHARACTER EVIDENCE FOR DEFENDANT LAWRENCE SHERMAN, M.D. (ECF NO. 212)</u>

The CCS Defendants seek to preclude Plaintiff from offering into evidence any of the investigations concerning the medical care Dr. Lawrence Sherman has provided during his forty-one years practicing medicine, particularly a 1994 investigation by the New York State Board of Professional Conduct resulting in a licensing restriction and a 2002 reprimand by the same body regarding the failure to provide any treatment and care to an emergency room patient at Kenmore Mercy Hospital.  The CCS Defendants maintain that such character evidence is not admissible under any exception set forth in Federal Rule of Evidence 404(b) and its probative value is outweighed by its potential prejudicial effect.

12

## Analysis

Again, the Court is not equipped to make a broad sweeping ruling precluding Plaintiff from introducing *any* evidence concerning Dr. Sherman's past behavior without knowing specifics about the evidence. The Court also cannot rule on whether the 1994 and 2002 incidents are relevant without knowing the details concerning those incidents and therefore whether they demonstrate—as Plaintiff's argue (*see* ECF No. 235 at Pg ID 10381-083)—Dr. Sherman's knowledge that David was at risk of a serious harm if not treated differently or Dr. Sherman's motive and intent in failing to treat him.

The Court, therefore, is **DENYING WITHOUT PREJUDICE** the CCS Defendants' Motion in Limine to Preclude Improper Character Evidence for Defendant Lawrence Sherman, M.D. (ECF No. 212.)

## CCS DEFENDANTS' MOTION IN LIMINE TO PRECLUDE THE USE OF THE SURVEILLANCE VIDEOS AS FOUNDATION FOR MEDICAL DIAGNOSIS/OPINION (ECF NO. 213)

On June 17, 2014, David was moved from the general housing unit in the Macomb County Jail to its mental health unit. (ECF No. 186 at Pg ID 6953-54.) Inmates in the mental health unit are continuously monitored via closed circuit television by deputies. (*Id*. at Pg ID 6954.) The surveillance video was presented by Plaintiff as evidence in response to Defendants' previous summary judgment motions. The videos appear to show David's condition and activity between June 17

and his death on June 27.  The medical examiner, Dr. Mary Pietrangelo, relied in part on David's appearance in the video recordings, including his display of "seizure like activity", when concluding that he suffered acute withdrawal from chronic benzodiazepine, methadone, and opiate mediations.

The CCS Defendants now argue, however, that the video is inadmissible because (1) it cannot be properly authenticated under Federal Rule of Evidence 901; and (2) its probative value is substantially outweighed by the dangers of it misleading and confusing the jury.  The CCS Defendants maintain that the video is of such low quality that there is a propensity for the recorded subjects to appear "jerky" or "twitchy" while moving, which could be improperly confused with "seizure-like" activity.

Within their briefs in support of this motion in limine, the CCS Defendants also ask the Court to preclude Dr. Pietrangelo's opinion that David suffered seizure-like activity and therefore died of withdrawal under Federal Rule of Evidence 702.  The CCS Defendants argue that Dr. Pietrangelo "lacks the requisite qualifications to formulate a medical opinion based on a low-quality video, has no experience in diagnosing seizure using video technology, and the relevant literature, case studies, and expert community opine that Dr. Pietrangelo's methodology in formulating her opinion is unreliable."  (ECF No. 213 at Pg ID 7879.)  According to the CCS

Defendants, there is no reliable evidence that David suffered seizures during his incarceration.

If the Court allows Plaintiff to add an expert to authenticate the video, the CCS Defendants request the same relief.

Plaintiff and the Macomb County Defendants have responded to the CCS Defendants' motion. The Macomb County Defendants take no position on the admissibility of the video. (ECF No. 227 at Pg ID 9566.) They argue, however, that Dr. Pietrangelo's opinion should not be excluded under Rule 702 as her opinions are not dependent upon the video surveillance footage but rather the medical and jail records and her post-mortem autopsy examination. (ECF No. 227 at Pg ID 9566.) The Macomb County Defendants maintain that there is testimony from corrections officers and medical care providers that David exhibited seizure-like activity.

Plaintiff maintains that the video was only "a minor part" of Dr. Pietrangelo's conclusion regarding the cause of David's death. (ECF No. 236 at Pg ID 10485.) Like the Macomb County Defendants, Plaintiff indicates that there is other evidence besides the video reflecting David's seizure and/or seizure-like activity. (*Id*. at Pg ID 10486.) Any argument regarding the quality of the video, Plaintiff argues, goes to its weight rather than its admissibility. (*Id*.) Plaintiff points out that the video recording was produced by the Macomb County Defendants in response to preservation of evidence letters from Plaintiff's counsel. Plaintiff further points out that the CCS

15

Defendants moved to submit a flash-drive containing the entire surveillance tape during dispositive motion briefing.

## Analysis

The Court first concludes that Dr. Pietrangelo should not be precluded from testifying as to her medical opinion as it is based on her review of sufficient facts and data independent of the contested video.  After performing the autopsy of David, Dr. Pietrangelo reviewed his medical records, hospital records, EMS records, jail records, toxicology reports, his Automated Prescription Service Report, and the jail footage. (ECF No. 213-3 at Pg ID 7948.)  Further, Dr. Pietrangelo's conclusion that David suffered seizure-like activity is supported by testimony from other witnesses, as well as the video.

As to the admissibility of the video itself, Sixth Circuit case law supports that the quality of the video goes to its weight rather than its admissibility.  *See United States v. Mize*, 498 F. Supp. 3d 978, 986 (S.D. Ohio 2020) (holding video surveillance footage admissible despite its inferior quality as that "merely goes to the weight of the evidence, not admissibility"); *Hopper v. Plummer*, 887 F.3d 744 (6th Cir. 2018).  In *Hopper*, the court considered the recording from a jail cell overhead video camera even though the "video lacked sound and the image stutter[ed] because the camera recorded at a frame rate of only four frames per second."  *Id*. at 749 n.2.

16

Lastly, the video can be properly authenticated.  Federal Rule of Evidence 901 provides that the proponent of evidence "must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  The rule sets forth an unexhaustive list of how this requirement can be satisfied.  Fed. R. Evid. 901(b).  The Macomb County Defendants provided Plaintiff with the video and can testify to its authenticity.  But the Court finds it hard to believe that the CCS Defendants will in fact challenge its authenticity at trial given that they sought to introduce it themselves during the summary judgment briefing.  (*See* ECF No. 149.)

For these reasons, the Court is **DENYING** the CCS Defendants' motion in limine concerning the video (ECF No. 213).

### CCS DEFENDANTS' MOTIONS IN LIMINE TO PRECLUDE ANY AND ALL EVIDENCE AND REFERENCE TO (A) AN FBI INVESTIGATION SURROUNDING MR. STOJCEVSKI'S DEATH (ECF NO. 214) AND (B) THE MACOMB COUNTY JAIL INTERNAL AFFAIRS AND SHERIFF INVESTIGATION (ECF NO. 215)

After David's passing, the Federal Bureau of Investigation ("FBI") conducted an investigation to determine whether any criminal or civil damages were warranted. Several interviews were conducted as part of this investigation and the FBI issued a report.  Macomb County's Office of Professional Standards and the Macomb County Sheriff's Office also conducted an internal investigation concerning David's death. The CCS Defendants seek to preclude Plaintiff from introducing any evidence related to these investigations, including any mention that the investigations occurred.  They

argue that the probative value of the evidence is substantially outweighed by unfair

prejudice and the risk of confusing the jury.  They further argue that the evidence

constitutes inadmissible hearsay.[2]

### Analysis

As an initial matter, Plaintiff does not oppose the redaction of limited portions

of the reports based on undue prejudice, potential jury confusion, or double hearsay

but notes that the wholesale exclusion of the reports is not warranted.  For the reasons

discuss below, this Court agrees that the reports are not completely excludable and

that the decision of whether any portion should be excluded can be made only once

the contents are presented and their use explained.

Evidence that is relevant generally is admissible.  *See* Fed. R. Evid. 402.

"Irrelevant evidence is not admissible."  *Id*.  Evidence is relevant if it has "any

tendency to make the existence of any fact more or less probable than it would be

without the evidence; and . . . the fact is of consequence in determining the action."

Fed. R. Evid. 401.  Relevant evidence may be excluded "if its probative value is

substantially outweighed by a danger of . . . unfair prejudice, confusing the issues,

---

[2] The CCS Defendants do not maintain that the entire report from the County's investigation is inadmissible under the hearsay rules, although they make that argument with regard to the FBI report.  According to the CCS Defendants' motion, only portions of the county report are inadmissible as hearsay within hearsay.  (*See* ECF No. 215 at Pg ID 8810.)

misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

The CCS Defendants maintain that the "marginal probative value" of the County's investigation report is outweighed by the danger that the jury will conclude that, because an investigation was necessary, Defendants "possibly violate[d their] professional conduct or committed acts that fall just short of professional misconduct."  (ECF No. 215 at Pg ID 8823-24.)  The CCS Defendants further argue that introduction of the report will confuse the jury and cause delay as the jurors are distracted by the report's analysis of whether Defendants committed professional misconduct, which is not relevant to the issues the jury must decide in a deliberate indifference case.  (*Id.*)  The CCS Defendants maintain that the introduction of the FBI report is likely to cause unfair prejudice because, given the prestige and authority of the FBI, its decision to investigate could lead jurors to conclude that Defendants must have done something wrong.

First, the Court is unable to balance the relevancy of the reports against the CCS Defendants' asserted prejudice without knowing the reports' contents.  Second, the potential prejudice claimed by the CCS Defendants can be avoided through proper jury instructions.  Jurors are presumed to understand and follow their instructions.  *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987))

19

Turning to the CCS Defendants' hearsay arguments, Federal Rule of Evidence excludes"[a] record or statement of a public office" from the rule against hearsay, regardless of whether the declarant is available as a witness, if:

> (A) [the record or statement] sets out:
>
> (i) the office's activities;
>
> (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law enforcement personnel; or
>
> (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
>
> (B) the opponent does not show that the source of information or other circumstances indicate a lack of trust-worthiness.

Fed. R. Evid. 803(8).  The Advisory Committee Notes to Rule 803(8) set forth four factors to consider when assessing a report's trust worthiness: "(1) the timeliness of the investigation, (2) the special skill or experience of the investigators, (3) whether the agency held a hearing, and (4) possible motivational problems.  *Bank of Lexington & Trust Co. v. Vining-Sparks Sec., Inc.*, 959 F.2d 606, 616 (6th Cir. 1992) (citation omitted).

The CCS Defendants do not identify any factors that they believe render the Macomb County investigative report untrustworthy.  They do argue that the FBI report is not trustworthy due to the lack of a hearing, problems with motivation, and the length of time between David's death and the investigation.  They maintain that

20

there was a year and almost four-month gap between David's death and the FBI's commencement of its investigation. The CCS Defendants argue that "[k]ey witnesses could have misremembered significant portions of the events in question." (ECF No. 214 at Pg ID 8796.) Moreover, because the investigation began after this lawsuit was filed, the CCS Defendants argue that witnesses may have been untruthful as they have something to gain from the lawsuit.

The CCS Defendants fail to elaborate on how the lack of a hearing has impacted the trustworthiness of the FBI report. As to the gap between David's death and the investigation, it is pure speculation that any witness's memory has been impacted by any delay, as is the CCS Defendants' assertion that witnesses may have had motivations to be untruthful when interviewed by the FBI due to the pending lawsuit. The same arguments could be made with respect to the witnesses' testimony during depositions and at trial in this lawsuit. As such, the CCS Defendants fail to demonstrate that the FBI report lacks trustworthiness.

For these reasons, the Court is **DENYING** the CCS Defendants' motions in limine to preclude Plaintiff from introducing the FBI and Macomb County reports in their entirety (ECF Nos. 214, 215). Before trial, the parties should confer to discuss the portions of either report that will be offered as evidence—as they should with any evidence—and attempt to reach an agreement as to any necessary redactions or

double hearsay issues.  Any specific objections to what will be offered may be presented thereafter to the Court.

### THE MACOMB COUNTY DEFENDANTS' MOTION IN LIMINE TO PRECLUDE INTERNAL POLICIES/PROCEDURES AND ANY ALLEGATION THAT BREACH OF POLICIES/PROCEDURES IS A CONSTITUTIONAL VIOLATION (ECF NO. 217)[3]

The Macomb County Defendants seek to preclude Plaintiff from introducing evidence of the county's policies and procedures because a violation of those policies or procedures does not amount to a constitutional violation.[4]  *See, e.g., Smith v. Freland*, 954 F.2d 343 (6th Cir. 1992) (explaining that a defendant's violation of a municipal policy does not demonstrate a constitutional violation as those policies do not establish the standard required by the Constitution and "[a] city can certainly choose to hold its officers to a higher standard than that required by the Constitution without being subject to increased liability under § 1983").  The Macomb County Defendants argue that introducing the county's policies and procedures into evidence therefore will likely confuse the jury as to the applicable legal standard.

---

[3] The Macomb County Defendants' motion in limine filed as docket entry 216 is discussed *infra* as it is related to a later-filed motion.

[4] Citing to the deposition transcripts of two of Plaintiff's experts, Margo Frasier and Debra Graham, the Macomb County Defendants assert that "all of Plaintiff's experts admit that [the county's] policies and procedures are constitutionally sound."  (ECF No. 217 at Pg ID 9019.)  Plaintiff responds that this is not true, pointing out that she has three additional experts and that Frasier's and Graham's deposition transcripts must be read as a whole to understand their opinions.  (ECF No. 240 at Pg ID 10786.)

## Analysis

The County's policies and procedures are relevant, particularly to Plaintiff's *Monell* claim, and proper instructions can be used to prevent the trier-of-fact from confusing those policies and procedures with the applicable legal standard. Plaintiff's theory in support of her *Monell* claim is that jail employees were not sufficiently trained with respect to those policies and procedures and/or properly supervised with regard to their execution of them.  (*See, e.g.*, ECF No. 186 at Pg ID 6989.)  Evidence of what these policies and procedures state therefore is relevant.

In all but one of the cases cited by the Macomb County Defendants in support of their motion (*see* ECF No. 217 at Pg ID 9028, 9034), the courts did not preclude the introduction of a municipality's policies or procedures for this purpose.  These decisions stand simply for the well-established proposition that "the violation of [municipal] policy [or procedure] is not in and of itself a constitutional violation under 42 U.S.C. § 1983."  *Bradley v. City of Ferndale*, 148 F. App'x 499, 508 (6th Cir. 2005) (citing *Freland*, 954 F.2d at 347).  The one exception is *Edgerson v. Matatall*, No. 10-14954, 2014 WL 172258 (E.D. Mich. Jan. 15, 2014).  In that case, however, there was no *Monell* claim at issue and for that reason the court found the city's policies and procedures not relevant.  *See id.* at *1, 10.

For these reasons, the Court is **DENYING** the Macomb County Defendant's

Motion in Limine to Preclude Internal Policies/Procedures and Any Allegation that

Breach of Policies/Procedures is a Constitutional Violation (ECF No. 217).

### <u>MACOMB COUNTY DEFENDANTS' MOTION TO STRIKE PLAINTIFF EXPERT MARGO FRASIER'S OPINIONS AND PRECLUDE PLAINTIFF'S EXPERT FROM TESTIFYING AT TRIAL (ECF NO. 218)</u>

This motion concerns Plaintiff's expert witness, Margo Frasier, who is

identified as a "criminal justice consultant and expert." (ECF No. 218-2 at Pg ID

9347.) The Macomb County Defendants concede that Frasier's testimony is relevant

and that she has reliable experience. (ECF No. 218 at Pg ID 9333.) Nevertheless,

they seek to preclude Frasier from testifying, arguing that her proposed opinion

provides only improper legal conclusions. As such, the Macomb County Defendants

contend that her testimony will not assist the jury "to understand the evidence or to

determine a fact in issue" and therefore is not admissible under Federal Rule of

Evidence 702. The Macomb County Defendants seem to argue that, alternatively,

Frasier's testimony must be limited. (*See id*. at Pg ID 9341.)

### Analysis

The Sixth Circuit has explained that "although an expert's opinion may

'embrace an ultimate issue to be decided by the trier of fact,' Fed. R. Evid. 704(a),

the issue embraced must be a factual one." *Berry v. City of Detroit*, 25 F.3d 1342,

1353 (1994). An expert "may [not] opine on the ultimate issue of liability." *Id.*

24

Thus, the court explained further, an expert can testify that a police department is "lax" and that certain consequences resulted from that laxity but not that the department's lax policies indicated that it "was *deliberately indifferent* to the welfare of its citizens." *Id.* (emphasis in original). The Sixth Circuit provided an additional example: "We would not allow a fingerprint expert in a criminal case to opine that a defendant was guilty (a legal conclusion), even though we would allow him to opine that the defendant's fingerprint was the only one on the murder weapon (a fact)." *Id.* The responsibility for defining legal terms, such as "deliberate indifference," falls on the court, not testifying witnesses. *Id.*

Therefore, to the extent Frasier avoids expressing legal conclusions, she should not be precluded from presenting her expert opinions. In fact, not every opinion in her report is stated as a legal conclusion. (*See* ECF No. 281-2.) Based on her experience in law enforcement and corrections, Frasier could provide testimony, for example, on the proper standards regarding medical care, mental health care, and nutrition in a prison setting. She could opine also on the sufficiency of the policies followed by the Macomb County Jail and CCS, whether Defendants should have been aware of David's serious medical condition, and what a reasonable corrections officer or prison health care worker would have done under the circumstances.

Accordingly, the Court is **DENYING** the Macomb County Defendants' Motion to Strike Plaintiff Expert Margo Frasier's Opinions and Preclude Plaintiff's

Expert from Testifying at Trial (ECF No. 218).  However, Frasier may not present

any opinion that states a legal conclusion.

### MACOMB COUNTY DEFENDANTS' MOTION IN LIMINE TO PRECLUDE MENTION OF VLADIMIR STOJCEVSKI, JENNIFER MYERS, OR ANY OTHER UNRELATED MATTER (ECF NO. 219)

The Macomb County Defendants seek to preclude Plaintiffs from introducing

evidence related to the incarceration of other individuals in the Macomb County Jail,

such as Vladimir Stojcevski (David's brother) and Jennifer Myers, as well as those

individual's claims and lawsuits against the County.  The Macomb County

Defendants argue that such evidence "would . . . inject mini trials within this larger

trial, would not amount to any relevant or probative evidence, and would only

prejudice a jury."  (ECF No. 219 at Pg ID 9497.)  The CCS Defendants concur in the

motion.  (*See* ECF No. 228.)

Plaintiff responds, indicating that she does not intend to mention Myers in this

litigation, at all, or Vladimir's dismissed litigation or facts related to his separate

deliberate indifference claims.  Plaintiff concedes that "an evidentiary preclusion that

prohibits any reference to [] Vladimir Stojcevski's or Jennifer Myers' lawsuit is

appropriate."  (ECF No. 242 at Pg ID 10927.)  Plaintiff therefore agrees to a

reasonable limitation on Vladimir's testimony related to his litigation and allegations

made therein.  (ECF No. 242 at Pg ID 10925-96.)  Plaintiff does, however, intend to

call Vladimir as a witness and argues that his testimony cannot be rejected wholesale as irrelevant or unduly prejudicial.[5]

Contrary to the Macomb County Defendants' assertion in reply, the Court does not believe that the subjects of Vladimir's proposed testimony relate to his deliberate indifference claims against Defendants. The Court also does not agree that *all* evidence related to Vladimir's incarceration in 2014—which coincided in part with David's incarceration—is irrelevant and/or unfairly prejudicial. For example, Vladimir's testimony that he was incarcerated at the Macomb County Jail with his brother and interacted with a corrections officer who commented on David's condition may be relevant and is not unfairly prejudicial. The same is true with respect to a nickname Vladimir knew the officers used to refer to David as it might

---

[5] Plaintiff describes some areas she plans to explore with Vladimir, which relate to (i) his relationship with his deceased brother before their incarceration and (ii) "information related to his own and his brother's incarceration. (ECF No. 242 at Pg ID 10915.) As to the former category, Plaintiff intends to ask Vladimir about "his life-long friendship with his brother . . . and how David's tragic death impacted him" (*id.* at Pg ID 10920.) As to the latter category, Plaintiff refers to: (i) the close proximity between David's and Vladimir's cells when they were housed at the jail; (ii) Vladimir's release to the hospital because he was suffering from a serious medical condition; (iii) "degrading and disdainful 'nicknames'" the Macomb County Defendants gave to Vladimir ("Stinky" because he suffered from incontinence) and David ("Blinky" because of his rapid eye movements); and (iv) comments to Vladimir by Defendant Paul Harris, a Macomb County correctional officer, which Plaintiff asserts provide evidence of Harris' knowledge of David's serious medical condition. Plaintiff indicates that Vladimir should be able to testify that he was incarcerated at the jail at the same time as his brother and share his observations of David during that period.

reflect their knowledge of behavior relevant to his medical condition.  On the other hand, what the officers called *Vladimir* or the fact that he was transported to the hospital for medical treatment may not be.  An individual determination must be made for each specific subject area Plaintiff ultimately decides to explore with Vladimir at trial.

As such, the Court declines to issue a broad ruling precluding Plaintiff from mentioning Vladimir, offering him as a witness at trial, or asking him about matters related to his incarceration.  The Macomb County Defendants' request for an order precluding Plaintiff from mentioning lawsuits and deliberate indifference claims brought by other Macomb County Jail inmates is moot.  To the extent the Macomb County Defendants seek to preclude Plaintiff from making any mention of  Vladimir Stojcevski and/or his incarceration at the jail in 2014, the Court is **DENYING** the motion.

## MACOMB COUNTY DEFENDANTS' MOTION IN LIMINE TO PRECLUDE EVIDENCE THAT WITNESSES WERE PREVIOUSLY NAMED AS DEFENDANTS (ECF NO. 220)

When Plaintiff filed her pleadings in this case, she named a number of individuals as Defendants, several of whom have been since dismissed.  If these individuals are called as witnesses at trial, the Macomb County Defendants ask the Court to preclude Plaintiff from referring to them as Defendants or indicating that they previously were parties to the case.  The Macomb County Defendants argue that

the individuals' prior status as parties in this matter is not relevant and would be unfairly prejudicial if shared with the jury.

In response, Plaintiff agrees not to identify any prior Defendant as a Defendant at trial, except Macomb County Sheriff Anthony Wickersham, Macomb County Jail Administrator Michelle Sanborn, and CCS Mental Health Director Natalie Pacitto. (*See* ECF No. 243 at Pg ID 10971-72.) Wickersham, Sanborn, and Pacitto were sued in part in their official capacities in conjunction with Plaintiff's municipal liability claim under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 692 (1978). As Plaintiff points out, the Court did not dismiss these individuals in their official capacities because there was insufficient evidence to support her *Monell* claim. Rather, they were dismissed because Plaintiff's claims against them in that capacity was duplicative of her claims against the County. (ECF No. 186 at Pg ID 6985-86, 6999-7000.)

### Analysis

Evidence that Wickersham, Sanborn, or Pacitto were initially named as defendants in this lawsuit is not likely "to make a fact more or less probable than it would be without the evidence" and that "fact is of [no] consequence in determining the action." *See* Fed. R. Evid. 404. Plaintiff's *Monell* claim is dependent in part on their roles as officials or supervisors, not as defendants in this action. Any possible relevance to their previous status as defendants would be outweighed by the danger

of unfair prejudice to the remaining defendants.  For example, the jury could conclude that these individuals are less credible simply because of their prior status as defendants, relatedly that they have an interest or motivation to be untruthful, or that if these individuals were dismissed as parties, the individuals who were not must be liable.

For these reasons, the Court is **GRANTING** the Macomb County Defendants' Motion in Limine to Preclude Evidence that Witnesses were Previously Named as Defendants (ECF No. 250).

## MACOMB COUNTY DEFENDANTS' MOTION IN LIMINE TO PRECLUDE EVIDENCE OF THE UNKNOWN WEIGHT OF DAVID STOJCEVSKI AT THE TIME OF BOOKING ON JUNE 11, 2014 OR ANY WEIGHT LOSS WHILE AT MACOMB COUNTY JAIL (ECF NO. 221)

As this Court set forth in its September 30, 2019 decision, David's weight was reported in Macomb County Jail records on the several occasions when he was incarcerated there.  (*See* ECF No. 186 at Pg ID 6949.)  According to the jail's records, David's weight between September 2006 and August 2009 fluctuated between 175 and 190 pounds.  (*Id*. (citing ECF No. 158-9 at Pg ID 184-207).)  When David arrived at the jail on June 11, 2014, his weight was recorded to be 195 pounds.  (*Id.* at Pg ID 6948 (citing ECF No. 148-2 at Pg ID 362-63).)  When he died sixteen days later, he weighed 151 pounds.  (*Id.* at Pg ID 6966 (citing ECF No. 148-12).)  Defendants have argued that David's weight was auto populated from his prior incarceration records when he began serving his June 2014 sentence.  (*See* ECF No.

30

148-13 at Pg ID 4341.)  The Macomb County Defendants now offer the affidavit from a current county employee to support this assertion.  (Sopfe Aff. ¶ 5, ECF No. 221-2 at Pg ID 9538-39.)  According to Sopfe, David's weight was recorded as 190 pounds on September 1, 2006, the first time he was booked into the jail, and this "weight was not updated at each of his subsequent eight bookings . . ., including his June 11, 2014 booking."  (*Id*.)  Sopfe continues:  "The data entered in the weight field on September 1, 2006 was automatically populated to read '190' for every booking thereafter."  (*Id*.)

The Macomb County Defendants therefore argue in their present motion that Plaintiff should be precluded from offering at trial any evidence of a contrary weight for David at the time of his June 2014 booking and, as a result, any evidence as to the amount of weight he lost between that date and his death.  The Macomb County Defendants maintain that the evidence is not reliable and therefore should be precluded under Federal Rule of Evidence 403.  The CCS Defendants join in the motion.  (*See* ECF No. 229.)

### Analysis

One clear problem with the Macomb County Defendants' argument is that David's weight was not recorded as 190 pounds when he was booked on June 11, 2014.  As set forth above, the jail records from that date record his weight as being 195 pounds.  This discredits Sopfe's assertion.

31

In any event, there appears to be a genuine issue of material fact regarding David's weight on June 11, 2014.  Plaintiff may present the intake record to convince the trier of fact that he weighed 195 pounds.  Defendants can present argument for why this number is not accurate.  It is for the trier of fact to decide which number is reliable and from there to decide how much weight David in fact lost between his intake and death.

For these reasons, the Macomb County Defendants' motion in limine concerning David's weight (ECF No. 221) is **DENIED**.

## THE MACOMB COUNTY DEFENDANTS' MOTION IN LIMINE TO STRIKE PLAINTIFF EXPERT DEBRA GRAHAM'S OPINION AND PRECLUDE PLAINTIFF'S EXPERT FROM TESTIFYING AT TRIAL (ECF NO. 216)

Plaintiff has retained registered dietician and licensed dietician and nutritionist Debra Graham to testify as an expert at trial.  The Macomb County Defendants ask the Court to strike Graham's testimony because (1) her report fails to list other cases where she testified, publications she has authored, or her fee schedule, as required under Federal Rule of Civil Procedure 26(2)(B); and (2) her opinions are based on assertedly unreliable information concerning David's weight when he was booked into the jail.  The Macomb County Defendants argue that because Graham's opinions concerning David's nutritional needs are based on that weight, they too are unreliable.

As to the first, Graham testified during her deposition that, as of that date, she had never been qualified by a court as an expert witness in the area of dietetics. (ECF No. 239-3 at Pg ID 10760.) Therefore, there were no cases to list in her report. Plaintiff represents that as of the date of her report, Graham also had not authored any publications to list and did not have a fee schedule. (ECF No. 239 at Pg ID 10711.) These asserted "omissions" from her report therefore are not a basis to preclude her from testifying.

Regarding the second, as discussed above, there is a factual dispute that the trier of fact must resolve concerning David's weight at intake on June 11, 2014. Graham obviously has no first-hand knowledge regarding David's weight at the time and must rely on the record evidence, including the jail's records which recorded David's weight as 195 pounds on that date, not the 190 pounds the Macomb County Defendants maintain was automatically populated with each booking. The Macomb County Defendants certainly can argue to the jury that David in fact weighed something other than 195 pounds on June 11, and that therefore the jury should reject Graham's opinions to the extent dependent on the latter weight. However, this factual dispute is not a basis to preclude her from testifying.

Moreover, a review of Graham's report reflects that many of her opinions are not dependent on David's weight and do not consist of her only summarizing his food and water intake as observed on the video recordings.

33

For these reasons, the Macomb County Defendants' Motion to Strike Plaintiff's Expert Debra Graham's Opinion and Preclude Plaintiff's Expert from Testifying at Trial (ECF No. 216) is **DENIED**.

### MACOMB COUNTY DEFENDANTS' MOTION IN SUPPORT OF APPORTIONMENT OF LIABILITY DAMAGES (ECF NO. 222)

The Macomb County Defendants ask the Court to rule that any damages assessed against them must be based on each Defendant's actions and the harm caused by those actions. Similarly, the Macomb County Defendants maintain that punitive damages may be awarded only upon separate determinations of how each Defendant acted.

### Analysis

As the Macomb County Defendants correctly point out, § 1983 liability must be premised on the individual's personal engagement in unconstitutional conduct. *Hayes v. Jefferson Cnty.*, 668 F.2d 869, 872 (6th Cir. 1982). Nevertheless, the Sixth Circuit has held that where the plaintiff in a § 1983 action has suffered an indivisible injury, joint and several liability is proper and apportionment of damages is improper. *Weeks v. Chaboudy*, 984 F.2d 185, 188-89 (6th Cir. 1993) (citing cases); *see also Northington v. Marin*, 102 F.3d 1564, 1569 (10th Cir. 1996) (explaining that "[m]ultiple tortfeasors who concurrently cause an indivisible injury are jointly and severally liable; each can be held liable for the entire injury."); *Watts v. Laurent*, 774 F.2d 168, 179 (7th Cir. 1985) (concluding that a former inmate at a youth center may

34

recover the entire judgment from any of the defendants found liable). In comparison, if "the injury is divisible and causation of each party can be separately assigned to each tortfeasor" joint liability is not proper. *Nichols v. Knox Cnty., Tenn.*, 718 F. App'x 338, 342 (6th Cir. 2017) (quoting *Weeks*, 984 F.2d at 189).

Plaintiff alleges that Defendants' combined deliberate indifference caused David's death—a single, indivisible injury. If the trier of fact finds that any Defendant, through that Defendant's actions, violated David's constitutional rights, the individual will be jointly and severally liable for any injuries awarded.

Punitive damages, in comparison, are assessed separately against each Defendant. *Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010) (citing *Bosco v. Serhant*, 836 F.2d 271, 281 (7th Cir. 1987)); *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 374 (2d Cir. 1988) (explaining the strong policy arguments against permitting the entry of joint and several liability on punitive damages, including that such damages are "intended in part as a penalty against a defendant who has exhibited a high degree of moral culpability and as a deterrence against further similar conduct by that defendant. Those interests are disserved if the judgment gives such a defendant an opportunity to escape payment of the penalty assessed.").

For these reasons, the Macomb County Defendants' Motion in Support of Apportionment of Liability and Damages (ECF No. 222) is **GRANTED IN PART**

**AND DENIED IN PART**.  Defendants may be held jointly and severally liable for all damages, except punitive damages.

## CONCLUSION

In summary, for the reasons set forth above, the Court is **DENYING** the motions in limine to: (i) preclude Plaintiff from eliciting expert testimony from Plaintiff's expert Robert Greifinger (ECF No. 209); (ii) limit Plaintiff's damages to survival damages (ECF No. 210); (iii) preclude the use of the surveillance video (ECF No. 213); (iv) preclude the introduction of the FBI and Macomb County reports (ECF Nos. 214, 215); (v) strike Graham's opinion and testimony (ECF No. 216); (vi) preclude evidence of Macomb County policies and procedures (ECF No. 217); (vii) exclude Frasier's opinions and testimony (ECF No. 218)[6]; (viii) bar references to Vladimir Stojcevski or his testimony concerning his 2014 detention at the Macomb County Jail (ECF No. 219)[7]; and (ix) preclude evidence of David's weight at booking (ECF No. 221).

The Court is **DENYING WITHOUT PREJUDICE** the motions in limine regarding (i) personnel files (ECF No. 211) and (ii) character evidence related to Lawrence Sherman (ECF No. 212).

---

[6] This ruling is subject to the limitation set forth *supra*
[7] The request to preclude evidence regarding other Macomb County Jail inmates and any other inmate's deliberate indifference claim aside from David's is moot.

The Court is **GRANTING** the motion to preclude Plaintiff from referring to individuals previously named as defendants as defendants or indicating that they were parties to the case previously (ECF No. 220).  It is **GRANTING IN PART AND DENYING IN PART** the motion to apportion damages (ECF No. 222).

    **IT IS SO ORDERED**.

                                              s/ Linda V. Parker
                                              LINDA V. PARKER
                                              U.S. DISTRICT JUDGE

 Dated: September 27, 2021